Cheryl Earlene Rich BOND *v.* James Wesley RICH

73-226                                   505 S.W. 2d 488

Opinion delivered February 19, 1974

*Esther M. White*, for appellant.

No brief for appellee.

CONLEY BYRD, Justice. Prior to June 4, 1970, the appellant Cheryl Earlene Rich (now Bond) and the appellee James Wesley Rich and their three children Garlyn Eugene Rich, Melinda Gaylene Rich and Angela Lynn Rich, then age 7, 5 and 3, respectively, were neighbors of Joseph Andrew Bond and his wife Marilyn. The Bonds had four children. The Riches separated on June 4, 1970, and Cheryl took her three children to Michigan. While there she received Aid to Dependent Children from the Michigan Welfare Department and lived in open adultery with her former neighbor Joseph Bond. On November 12, 1970, the trial court denied Cheryl's divorce petition but granted appellee a divorce upon the grounds of adultery. The divorce decree awarded custody of the three children to appellee.

The record shows that Marilyn Bond as late as January 13, 1971, still held some hope that her marriage to Joseph Bond could be salvaged. However, on March 26, 1971, a divorce was obtained and some three days later the appellee and Marilyn Bond were married and took up residence in Springdale, Arkansas, with appellee's three children and Marilyn's four children. After the marriage one child was born.

Following the Bond divorce on March 26, 1971, Cheryl and Joseph Bond were married on April 1, 1971. They took up residence in Forrest City, Arkansas. Marilyn enrolled in an LPN nurses' training course and Joseph was a route salesman with L. B. Price Mercantile Company.

Cheryl filed a petition for change of custody on December 21, 1971, which resulted in a consent decree on February 3, 1972, leaving custody with appellee but giving Cheryl extensive visitation rights including all of the non-school months. Thereafter appellee filed a petition to modify the February 3rd order to change that portion which allowed every other week-end visitation rights during the school months to once a month visitation rights. On August 24, 1972, Cheryl filed a petition to remove primary custody from appellee to her.

When the matter came on to be heard the only visual change between the conditions as they existed on February 3, 1972 and the time of the hearing in January, 1973, was that Cheryl and Joseph Bond now live in Little Rock where he is now District Manager for the same employer and Cheryl has a job with the Arkansas Training School for Girls.

The school records show that the children are doing well in school.

Based upon these facts the chancellor after seeing and hearing the witnesses found that there had not been a sufficient change of circumstances since the February 3, 1972 custody order to warrant a modification thereof. For reversal the appellant contends; that the trial court erred in holding that it could not look behind the February 3rd order; that the appellee is estopped to assert that the trial court may not go behind the February 3rd order; and that the trial court erred in finding that there was not a sufficient change of circumstances to justify awarding custody to appellant.

The law on the subject was stated in *Henkell* v. *Henkell*, 224 Ark. 366, 369, 273 S.W. 2d 402 (1954), in this language:

> "It is well settled that a decree fixing the custody of a child is final on conditions then existing and should not be changed afterwards unless on altered conditions since the decree was rendered or on material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child. *Weatherton* v. *Taylor*, 124 Ark. 579, 187 S.W. 450; *Reynolds* v. *Tassin*, 212 Ark. 1020, 208 S.W. 2d 987. While any agreement as to custody the parties may make in contemplation of divorce is of some importance as tending to show their attitude, it is not binding on the courts. *Burnett* v. *Clark*, 208 Ark. 241, 185 S.W. 2d 703. We have frequently said that the paramount and controlling consideration in cases of this nature is the welfare of the child. *Phelps* v. *Phelps*, 209 Ark. 44, 189 S.W. 2d 617."

The chancellor listened to three days of testimony and the record contains 27 pages wherein he explained

the law and his reasons for not going behind the February 3rd consent decree and for denying a change of custody. We cannot say that he incorrectly applied the law nor that his findings are contrary to a preponderance of the evidence.

Affirmed.

HARRIS, C.J., dissents.