104

Mary Lois (Taylor) WHITE v. James E. TAYLOR

CA 86-175                                          717 S.W.2d 497

Court of Appeals of Arkansas
Opinion delivered October 15, 1986

*Gibson, Gibson & Hashem*, by: *John F. Gibson, Jr.*, for appellant.

*Paul Petty*, for appellee.

DONALD L. CORBIN, Judge. This appeal comes to us from the Jefferson County Chancery Court. Appellant, Mary Lois (Taylor) White, appeals the decision of the chancellor denying her petition for change of custody. We affirm.

Appellant petitioned the court to hold appellee, James E. Taylor, in contempt for failing to comply with appellant's visitation rights and for a change of custody. Appellant alleged in her petition for change of custody that appellee had subjected the child to immoral and indecent behavior in that he had resided with a married woman in the presence of the child. Appellant also asserts on appeal that the only reason the court changed custody of the child from the mother to the father in a previous proceeding was because appellant failed to comply with the property settlement provisions in the divorce decree.

On August 1, 1984, an order was filed in the Chancery Court of Jefferson County which held that the parties continued to have joint custody of the child; however, it changed primary custody of the child from appellant to appellee. Appellant filed a notice of appeal August 24, 1984, on the August 1, 1984, order changing custody to the father. However, on February 11, 1985, appellee filed a motion to dismiss the appeal for failure to file the record on appeal within 90 days, a violation of Arkansas Rules of Appellate Procedure Rule 5(a). On February 15, 1985, this motion was granted and the appeal was dismissed. Therefore, appellant has lost her right to appeal the August, 1984, decision changing custody.

Appellant's petition for modification of custody decree and for order of contempt were properly made. The trial court made the following findings:

> The Court finds that Mr. Taylor has violated the order concerning visitation. If either party has any problem in exercising any visitation or exchange they should contact the Court immediately, through their attorneys if possible, and the Sheriff will be requested to assist. Neither Mrs. Dew [appellant's mother] nor Mrs. White have been very diligent in attempting to exercise visitation in the past but the Court wishes to assure both of them that the Court will assist in any way possible when and if any problems are brought to its attention.

> Mary Lois Taylor White remains in flagrant and willful contempt of the orders of this Court pertaining to the division of property and has been since it was entered. The failure to pay the sums owing Plaintiff has been solely the fault of Mrs. White and she has had ample time, means, and opportunity to correct this situation. She has exasperated this Court in her refusal to comply with its orders (or to even bother to read the Court's orders according to her testimony). Her present financial condition, even if her testimony is completely believed, which it is not, is not a sufficient excuse as she has had ample funds to pay during the past two years. She may purge herself yet of this contempt by paying to the Clerk the sum of $6,983.51 on or before November 20, 1985. If payment has

not been made in full by that time then the Sheriff of any County wherein Mrs. White may be located is ordered to incarcerate her promptly notifying the Court of such action and to hold her until further order of this Court or the receipt of $18,775.00, the total sum ordered previously. As a further condition to Mrs. White's purging herself of this contempt, she shall within 180 days of this order, have established and made all contributions due the trust fund for her son.

This order was dated October 18, 1985. Appellant raises the following points on appeal: (1) The trial judge erred in refusing to recuse from the case; (2) the court erred in denying appellant's petition for change of custody; and (3) the court erred in denying appellant any reasonable means to purge herself of contempt of court.

Appellant alleges that it was error for the chancellor to refuse appellant's motion for change of judge. Appellant's mother testified at the hearing on the motion that appellee had bragged to her about knowing all the judges and that he could "put them in his hip pocket." Another witness, James Merritt, testified that appellee's girlfriend, Merritt's wife, told him that appellee had worked for the judges, done favors for them, and that "it was time for a payback."

In *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983), the Arkansas Supreme Court set out the following standard of review:

The fact that a judge may have, or develop during the trial, an opinion, or a bias or prejudice does not make the trial judge so biased and prejudiced as to require his disqualification in further proceedings. *Walker* v. *State*, 241 Ark. 300, 408 S.W.2d 905 (1966). Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Narisi* v. *Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge. We find no Arkansas case where a trial judge has stated that he was without prejudice and could hear a case and, without more,

we reversed that decision. Thus, absent some objective demonstration of prejudice, it is a communication of bias which will cause us to reverse a judge's decision on disqualification.

*Id.* at 331, 651 S.W.2d at 455. It appears that we cannot say that there was an objective demonstration of prejudice by the judge in the case at bar. We cannot hold that the judge should have recused merely because of allegations of prejudice by a concerned party. There must be an objective demonstration of prejudice by the judge and none was proven here.

It is well-settled that the paramount and controlling consideration in custody cases is the welfare of the child. *Bond* v. *Rich*, 256 Ark. 51, 505 S.W.2d 488 (1974). The decree fixing custody of the child is final on conditions then existing and should not be changed afterwards unless on conditions altered since the decree was rendered or on material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child. *Id.* at 53, 505 S.W.2d at 489. The evidence appellant presented as to change of conditions was the following: Testimony that appellant had remarried and was a permanent resident of Alabama and testimony that a married woman had resided in appellee's home for approximately four weeks while the child lived there also. Evidence indicated that the woman no longer lived there.

In cases involving child custody a heavier burden is cast upon the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony and the child's best interest. This court has no such opportunity. We know of no case in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great weight as one involving minor children. *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981). In custody matters, the chancellor's finding of facts will not be overturned on appeal unless they are clearly erroneous. ARCP Rule 52; *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981). In the case at bar, the chancellor's finding of no material change in circumstances substantial enough to justify change of custody is not clearly erroneous. Therefore, we find no merit in appellant's second point for reversal.

■ As her third point for reversal appellant alleges that the court erred by denying appellant any reasonable means to purge herself of contempt. The record indicates that since October 19, 1983, appellant has been held in contempt for failure to comply with the October 7, 1983, order. On August 1, 1984, appellant was found in willful contempt. It appears to this court that the chancellor in this case has made numerous attempts to allow appellant opportunities to purge herself of contempt.

■ The disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it is such an interference with the administration of justice as to constitute contempt. *Henderson* v. *Dudley*, 264 Ark. 697, 574 S.W.2d 658 (1978). Punishment for contempt is an inherent power of the court. *Id.* at 710, 574 S.W.2d at 666. On appeal from a finding of contempt this court will reverse only where the finding of the chancellor is against the preponderance of the evidence. *C.R.T., Inc.* v. *Brown*, 269 Ark. 114, 602 S.W.2d 409 (1980). We find that the chancellor's finding is not against the preponderance of the evidence.

For the reasons stated above we affirm the decision of the trial court.

Affirmed.

CLONINGER, J., agrees

MAYFIELD, J., concurs.

MELVIN MAYFIELD, Judge, concurring. I concur in the majority opinion with one reservation. The trial judge's order holding the appellant in contempt provides:

> She may purge herself yet of this contempt by paying to the clerk the sum of $6,983.51 on or before November 20, 1985. If payment has not been made in full by that time then the Sheriff of any County wherein Mrs. White may be located is ordered to incarcerate her promptly notifying the Court of such action *and to hold her until further order of this Court or the receipt of $18,775.00*, the total sum ordered previously. (Emphasis added.)

The trouble with this provision is that, unless she pays $6,983.51 by November 20, 1985, appellant is ordered confined

until she pays the total sum of $18,775.00, but the court makes no finding, and the record does not show, that the appellant has, or will ever have, the ability to pay either amount.

This point is specifically raised by the appellant and is not responded to by the appellee. Apparently, the exact point has not been decided in Arkansas but the law is clear. In *Mays* v. *Mays*, 193 Conn. 261, 476 A.2d 562 (1984), the court said:

It is clear that the court could reasonably have found the defendant's failure to make any substantial payments upon the support order for four years was inexcusable and constituted a contempt. The punishment imposed of incarceration "until such time as the defendant purges himself," however, would exceed the court's authority under the circumstances of this case if it is construed to mean that the defendant must remain in confinement until such time as the arrearage of $5220 is paid. Such an interpretation of the order would appear to deprive the defendant of liberty for his lifetime, since the only evidence presented on the subject indicated that his assets were minimal and that he had no available means of paying the large sum required to discharge his obligation. Nothing in the record warrants an assumption that his financial situation was likely to improve during his imprisonment.

. . . .

"[I]n civil contempt proceedings, the contemnor must be in a position to purge himself." 17 Am. Jur. 2d, Contempt § 4; see *Morelli* v. *Superior Court of Los Angeles County*, 1 Cal. 3d 328, 332, 82 Cal. Rptr. 375, 461 P.2d 655 (1969). Otherwise the sanction imposed would cease to be remedial and coercive but would become wholly punitive in actual operation. The order of confinement until purged entered in this case does not specify what the defendant must do in order to purge himself, except to pay the entire $5220 arrearage, a feat which the evidence does not even remotely suggest he was able to perform. The case, therefore, must be remanded to the trial court so that the court may set forth in the order the conditions under which the defendant may be deemed to have purged himself and to be entitled to his release from imprison-

ment. Those conditions, of course, must be reasonably within the power of the defendant to meet. An order of confinement upon an adjudication of civil contempt must provide the contemnor with the key to his release in terms which are not impossible for him to satisfy.

In *Bowen* v. *Bowen*, 471 So. 2d 1274 (Fla. 1985), the court said:

> As this Court has previously stated, the purpose of a *civil* contempt proceeding is to obtain *compliance* on the part of a person subject to an order of the court. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contemnor's "key to his cell." *Pugliese.* The purpose of *criminal* contempt, on the other hand, is to *punish.* Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court. *Andrews; Pugliese; Demetree* v. *State ex rel. Marsh,* 89 So. 2d 498 (Fla. 1956); *In re S.L.T.,* 180 So. 2d 374 (Fla. 2d DCA 1965). Because this type of proceeding is punitive in nature, potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings. *See Aaron* v. *State,* 284 So. 2d 673 (Fla. 1973); *see also* Fla. R. Crim. P. 3.830, 3.840. We continue to adhere to the view that incarceration for civil contempt cannot be imposed absent a finding by the trial court that the contemnor has the present ability to purge himself of contempt. Without the present ability to pay from some available asset, the contemnor holds no key to the jailhouse door. (Emphasis in the original.)

*See also Barrett* v. *Barrett,* 368 A.2d 616 (Penn. 1977); *Sword* v. *Sword,* 249 N.W.2d 88 (Mich. 1976); *Ex parte Cummings,* 610 S.W.2d 238 (Tex. Civ. App. 1980).

It is true that the court's order in the instant case does direct the sheriff to hold appellant until further order of the court *or* until the money due is paid. Therefore, I concur in affirming this case based on the assumption that the court has not, and will not, leave the appellant incarcerated for civil contempt without an

order, supported by proper evidence, providing the key to her release in terms that are not impossible for her to satisfy.