John I. PURTLE *v.* COMMITTEE ON
PROFESSIONAL CONDUCT

93-1018                                        878 S.W.2d 714

Supreme Court of Arkansas
Opinion delivered June 6, 1994

*John I. Purtle*, for appellant.

*Cearly Law Firm*, by: *Robert M. Cearly, Jr.*, for appellee.

CATHLEEN V. COMPTON, Special Chief Justice. In May of 1988, Susan Stafford was divorced from her husband, Steve Woodrow Stafford, by order of the Chancery Court of Pulaski County. There were two children born to the marriage, Christy and Mitchell. The decree of divorce granted custody of Christy and Mitchell to Susan Stafford, but with a special provision: she was not allowed to remove the children from the residence of her parents, Margie and Cletus Davis, without prior permission of the Court.

In January of 1991, Mr. and Mrs. Davis, who had intervened in their daughter's divorce action, were granted custody of Christy and Mitchell. The order of January 31, 1991, was entitled "Order of Temporary Custody & Granting Intervention." The order stated

among other things that "[T]he prior Decree of this Court grant-
ing custody of the children to the Plaintiff is hereby modified
and *sole* custody of Christy and Mitchell Stafford is given to Cle-
tus and Margie Davis pending further Order of the Court."
(Emphasis ours.)

On February 12, 1991, this order was reaffirmed. A hearing
was set for April 1991, but never occurred.

In August of 1991, following their reconciliation, Susan and
Steve Stafford hired the appellant, John Purtle, to represent them
in an effort to regain custody of their children. A review hear-
ing was already set for December 12, 1991. Although no hear-
ing occurred, an order was entered on December 13, 1991.

The appellant had advised the Staffords to obtain suitable
housing and employment prior to custody hearings. In Decem-
ber of 1991, they had failed to attain those goals. When Robert
Newcomb, counsel for Susan Stafford's parents, requested a con-
tinuance of the December 12, 1991 hearing due to Margie Davis's
health, the appellant, after consultation with his clients, agreed
to the continuance. An order drafted by Mr. Newcomb was entered
on December 13, 1991. That order stated that "[B]y agreement
of the parties the Intervenors are awarded custody of Christy
Stafford and Mitchell Stafford *until further order of this Court.*"
(Emphasis ours.) It is the wording and effect of that order which
lead to this appeal.

Susan Stafford filed an affidavit on December 21, 1992, in
which she alleged that John Purtle had violated Model Rule of
Professional Conduct 1.2(a) in that he had failed to consult with
her as to the means by which the objectives of the representation
were to be pursued, and that he had engaged in conduct preju-
dicial to the administration of justice, all based on the language
of the order entered on December 13, 1991.

Following a hearing before the Supreme Court of
Arkansas Committee on Professional Conduct on May 15, 1993,
a Letter of Reprimand was issued to John Purtle by the Commit-
tee. It is from that Letter of Reprimand that John Purtle appealed.
The decision of the Committee is reversed, and the complaint is
dismissed.

We hear appeals from the Committee's decisions *de novo*.

The issue on appeal is whether the decision of the Committee was supported by substantial evidence. We hold that it was not.

The confirmation letter sent to John Purtle by the Committee states that Purtle violated Rule 1.2(a) of the Model Rules of Professional Conduct, and further states as follows:

> This Rule states, in part, that a lawyer shall consult with the client as to the means by which the objectives of the representation are to be pursued.

It is uncontroverted that the objective of the representation was to regain custody of the Staffords' children. Both Ms. Stafford and Mr. Purtle testified that Mr. Purtle had told the Staffords that they needed to obtain suitable housing and employment before this objective could be satisfied. The Staffords were, at the time they hired Mr. Purtle, living in a three bedroom house with about a dozen other people, and neither of them was gainfully employed. By December of 1991, the Staffords had either gotten a mobile home but had no beds for their children, or were living with Mr. Stafford's parents. The record is not altogether clear.

The Staffords were consulted about the continuance of the December 12, 1991 hearing, and were agreeable to the continuance. However, some weeks following the discussion of the continuance, they went to the courthouse and looked at their file. Upon seeing the order of December 13, 1991, they took it to another attorney, Gene Fitzhugh, who advised them, according to Ms. Stafford, that the order granted full custody of Christy and Mitchell to her parents, and that it was, in some form, a final order. The Staffords then took the position that Mr. Purtle had "sold them out."

Margie Davis, the mother of Susan Stafford, testified at the Committee hearing. Her testimony is critical. She told the Committee that the order of December 13, 1991, was, in her opinion, an order of continuance. She also noted that her attorney had always told her that ". . . nothing is final, ever . . . until they're eighteen years old . . . ." In her mind, the order of December 13, 1991, changed nothing. She believed that the situation that had

existed clearly since January 1, 1991, and arguably since May 5, 1988, was going to be continued.

Robert Newcomb, the Davises' attorney, also considered that the December 13, 1991 order simply continued the status quo. The only change brought about by the December 13, 1991 order was a potential increase in visitation to the Staffords.

Susan Stafford was asked by Mr. Virden of the Committee the following question: "If after that word, 'awarded,' if that had said 'temporary,' would you have had any problem?" Her answer was, "No, sir."

The appellant was reprimanded by the Committee on account of semantics, and nothing more. In its decision, the Committee elevated form over substance. The Rules of this Court regulating Professional Conduct of Attorneys at Law set forth the Purpose of the Rules, and further set forth the authority and powers of the Committee. At no point in the Rules is it stated that the Committee shall substitute its views for that of the attorney being investigated. Had Mr. Purtle allowed his clients to proceed to hearing on the merits of their case on December 12, 1991, they might well have had a legitimate complaint against him because their case was so weak. The continuance was clearly in their best interests, and in furtherance of the objective of the representation.[1]

The record is important to establish a context for this decision. Mr. and Ms. Stafford hired Mr. Purtle to obtain custody of their two minor children. From May of 1988, they had basically abandoned their children to Mr. and Mrs. Davis. Following entry of the divorce decree, it is unclear what happened to Mr. Stafford. Ms. Stafford became involved with a man in Texas (while her parents cared for her children). She married a man (while her parents cared for her children), and she divorced him (while her parents cared for her children). She ultimately reconciled with Mr. Stafford, which led to her parents obtaining an order of intervention and custody. Each order, whether ex parte or otherwise,

---

[1]Parenthetically, we note that a hearing before the Committee is an adversarial proceeding which can substantially affect the rights of the respondent attorney. Attorneys responding to a complaint brought before the Committee should give serious consideration to representation by counsel.

granted custody of Christy and Mitchell to Mr. and Mrs. Davis. These orders, other than the one dated December 13, 1991, had been entered by other attorneys before Mr. Purtle's services were engaged. Nothing has changed from January 31, 1991 to the present. As of the date of the hearing before the Committee on May 15, 1993, although new counsel had been retained by the Staffords, and the case reopened, Christy and Mitchell continued to reside with and be in custody of their grandparents. There has been no damage nor any harm done to Mr. and Ms. Stafford by any action of Mr. Purtle. In another context, the action of Mr. Purtle would be referred to as "harmless error."

■■ There is, in effect, no "final order" in a custody case, until the children have reached their majority. Custody is determined by what is in the best interests of the children, and is not altered absent a material change in circumstances. Ark. Code Ann. § 9-13-101 (1987); *Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). In essence, all orders of custody are "temporary," by their very nature. The unyielding consideration in child custody matters is the welfare of the children. *Stephenson* v. *Stephenson*, 237 Ark. 724, 375 S.W.2d 659 (1964).

■ The record on appeal is woefully inadequate, and is silent as to why Mr. and Mrs. Davis originally obtained custody. However, the law is that it is the natural parent who is the preferred custodial parent. *Shuh* v. *Roberson*, 302 Ark. 305, 788 S.W.2d 740 (1990). Custody is generally not granted to someone other than the natural parent or parents absent a finding of lack of fitness of the natural parent. *Feight* v. *Feight*, 253 Ark. 950, 490 S.W.2d 140 (1973). It may be inferred from the orders of January and February of 1991, that the Chancellor found that Mr. and Ms. Stafford were unfit to raise their children, and that it was in Christy's and Mitchell's best interests to live with their grandparents.

Mr. Purtle's job was to advise and counsel with the Staffords as to how to obtain their goal of regaining custody of their children. He so advised, and his advice, for all practical purposes went unheeded.

The decision of the Committee must be reversed, and the complaint of Ms. Stafford must be dismissed.

Reversed and dismissed.

CORBIN and BROWN, JJ., and TED DRAKE, KANEASTER HODGES and IKE ALLEN LAWS, Special Justices, join.

DARRELL BROWN, Special Justice, not participating in the final vote and the opinion.

HOLT, C.J., and DUDLEY, HAYS, NEWBERN, and GLAZE, JJ., not participating.