Tracy BLAIR *v.* John BLAIR

CA 05-1024                                    235 S.W.3d 916

Court of Appeals of Arkansas
Opinion delivered May 17, 2006

[Rehearing denied June 21, 2006.]

*Cullen & Co., PLLC*, by: *Tim Cullen* and *Kami S. Wallace*, for appellants.

*Clark & Spence*, by: *George R. Spence*, for appellee.

KAREN R. BAKER, Judge. In this child-custody case, appellant Tracy Blair appeals from an order in which the Benton County Circuit Court found that a material change of circumstances had occurred since its initial child-custody determination and that, as a result, it was in the best interests of the children that appellee John Blair have custody of the parties' children. We agree that the finding of a change of circumstances was in error. Because that threshold requirement was not met, we reverse and remand. *See Tipton v. Aaron*, 87 Ark. App. 1, 185 S.W.3d 142 (2004).

The parties in this case were married for twelve years. During their marriage, three children were born, a son, R.B., born December 2, 1991, a daughter, H. B., born April 8, 1996, and a second son, W.B., born December 31, 1997. The parties separated on October 29, 2003. Following their separation, appellee filed a petition for an absolute divorce and sought custody of the children. Appellant filed a counter-claim to appellee's petition for divorce and also sought custody of the children.

In the course of the divorce proceedings, the trial court was made aware of the fact that appellant was involved in an extramarital affair with Kevin Hanshaw, that the relationship began prior to the parties' divorce, and that, at the time, Mr. Hanshaw was married to another woman. Following the divorce, appellant and her children moved from Rogers, Arkansas, in Benton County to Benton, Arkansas, in Saline County. Although not pregnant at the time of the divorce, appellant subsequently gave birth to a child, fathered by Mr. Hanshaw, out of wedlock.

The change of circumstances arguments focus on the fact that appellant moved from Benton County and the fact that she gave birth to a child out of wedlock. Three provisions of the parties' divorce decree entered on April 23, 2004 are relevant to our analysis. The decree provided that appellant would have custody and appellee's visitation would be determined in accordance with the two following provisions:

  a. [T]hat the [appellee] shall have visitation rights in accordance with the Standard Visitation Schedule attached hereto, except that he shall have overnight visitation on Wednesday evening and shall deliver the children to school the next morning. That, if school is out, he shall deliver them to the [appellant] by 7:00 a.m. That in addition, he shall have additional overnight visitation every Sunday with the children being delivered to school or to the [appellant] by 7:00 a.m. on Monday morning.

b. *That, if the [appellant] moves from the Benton County area*, then the [appellee] shall not have the overnight visitation of Wednesdays and Sundays, but shall have visitation two (2) consecutive weekends from 6:00 p.m. on Friday until 6:00 p.m. on Sunday, the [appellant] shall then have one weekend and [appellee] shall then have an additional two (2) weekends. That said visitation shall continue in such rotation. That the [appellant] shall be required to provide transportation for said children to [appellee's] residence for each visitation.

(Emphasis added.) The decree further provided:

10. That the [appellant] shall be enjoined and restrained from any contact, either by telephone or in person, with any married person with whom she is having a romantic relationship while said children are in her *actual custody*.

(Emphasis added.)

After appellant gave birth to her out-of-wedlock child, appellee filed a petition for a change of custody. At the conclusion of all the testimony, the trial court made several comments, one of which was the following:

We would not be here today if [appellant] had not continued the relationship with Mr. Hanshaw. It was a major concern for the court and I had to outline several rules that I normally would not do for an adult, such as phone time with him. She was not to introduce him into the kids' lives while he was married. *Having a baby was blatantly wrong* and introduced Mr. Hanshaw into their lives. She may not have intended the pregnancy, but it is a fact.

(Emphasis added.) Her comments also included this pronouncement:

I don't argue about her decision to keep the baby. My problem is that she kept the relationship at the risk of compromising her role as custodial parent. She should have terminated the relationship until he was divorced. Now, she is not only distracted by this long distance illicit relationship, plus she's got a baby to care for, which adds to her burden, both time-wise and financially. She did claim that Mr. Hanshaw sends money but I don't see any proof of how much money she really gets from him.

Appellee relies upon these statements by the trial court in his argument that the trial court properly found a change of circumstances allowing a modification of the custody order. Regarding

the birth of appellant's new child, he reasons that "evidence of the [a]ppellant's immorality is now present in the [a]ppellant's life twenty-four hours a day, seven days a week, and it would be impossible to avoid the minor children of the parties being exposed to that evidence constantly if left in [a]ppellant's custody."

Determining whether there has been a change of circumstances that materially affects the children's best interest requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court. *Id.* Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). Neither will custody be changed to punish or reward either parent. *See Hobbs v. Hobbs*, 75 Ark. App. 186, 55 S.W.3d 331 (2001). Moreover, our courts refuse to modify custody merely because one parent has more resources or income. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003); *Malone v. Malone*, 4 Ark. App. 366, 631 S.W.2d 318 (1982).

The trial court's findings in this regard will not be reversed unless they are clearly erroneous. *Vo v. Vo, supra.* While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Id.* There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id.*

In this case, the original decree anticipated appellant's move in the original visitation schedule. The decree specifically sets forth an alternative visitation schedule in the event that appellant moved from the Benton County area; therefore, the move from the Benton County area cannot be an event or circumstance unknown to, or unanticipated by, the court at the time that the original decree was entered and cannot qualify as a change of circumstance

sufficient to warrant the court's consideration of a custody modification. Even if the decree had no such provision, the trial court failed to apply the analysis established by *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), as appropriate for relocation cases. *See also Benedix v. Romeo*, 94 Ark. App. 412, 232 S.W.3d 493 (2006).

Similarly, the appellant's extramarital sexual relationship with Mr. Hanshaw was known by the trial court at the time of the initial custody decision. Further, the decree anticipates that the relationship would continue except when the children were in appellant's "actual custody."[1] Therefore, the continuing sexual relationship between appellant and Mr. Hanshaw cannot constitute a change of circumstances. The trial court's comments following the hearing on appellee's motion to modify custody suggest that the reason the original decree proscribed contact between appellant and Mr. Hanshaw in the children's presence was to prevent appellant from introducing Mr. Hanshaw into the children's lives while Mr. Hanshaw was married to someone else. The original decree does not articulate this basis for the court's proscription; yet, the judge specifically found a change of circumstances occurred when the birth of the child introduced Mr. Hanshaw into the children's lives.

We do not agree that the birth of the child introduced Mr. Hanshaw into the children's lives. Appellant testified at the hearing that Mr. Hanshaw lives in Ohio. The parties' oldest child testified that he does not see Mr. Hanshaw, that Mr. Hanshaw is not involved with their lives, and that he guessed that Mr. Hanshaw saw his baby brother, Mr. Hanshaw's boy, when he and his other siblings were at his dad's home. It is undisputed that the only time that the children were in the physical presence of Mr. Hanshaw occurred when appellant's mother took the children to appellant's mother's house under the mistaken belief that Mr. Hanshaw had left her house.

Furthermore, appellant testified that, even though she spoke with Mr. Hanshaw every day by phone, she consciously made the effort to talk to him when the children were not present. If he called and one of the children answered, he neither engaged in a conversation nor hung up on the children, but merely asked for

---

[1] We interpret the phrase "while said children are in her actual custody" as used in paragraph 10 of the decree to mean while the children are physically present.

their mother. If the children were there, she would tell him that she could not talk at that time. While she may have spoken to him after the school day ended, the children would be outside playing. When asked if she had called Mr. Hanshaw after her daughter was accidently hurt, she said that she did not remember calling him, but if she did, it was because she was very upset. Although appellee complained that appellant had called Mr. Hanshaw seventeen times on that day when the parties' daughter had been injured, he admitted that all of the calls were while the children were in school and not in appellant's presence. In addition, appellee agrees that the children are unfamiliar with Mr. Hanshaw and argues on appeal that appellant's having a child fathered by a man the children do not know is an additional concern this court should consider.

■ Given this evidence and argument, we hold the trial court erred in finding that appellee proved a material change of circumstances in this case. The trial court entered the original decree awarding custody of the children to appellant fully aware of both appellant's intention to move from Benton County and the existence of her sexual relationship with Mr. Hanshaw. A decree awarding the custody of a child is final on the conditions then existing and will not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the children. *Beavers v. Smith*, 223 Ark. 43, 264 S.W.2d 617 (1954); *Smith v. Smith*, 215 Ark. 862, 223 S.W.2d 772 (1949); *Kirby v. Kirby*, 189 Ark. 937, 75 S.W.2d 817 (1934).

Appellee contends that, while the circuit judge was aware of the relationship at the time the initial custody order was entered, the court could not have known that appellant would place a greater value on continuing the relationship with Mr. Hanshaw than on her relationship with her children. However, nothing in the original decree can be construed as a warning that appellant risked losing custody of her children by continuing her existing relationship with Mr. Hanshaw; to the contrary, the original decree anticipates that the relationship will continue outside the presence of the children. Appellee argues further that "at this point, it is impossible for appellant to keep her affair with a married man, or at least the results of that affair, separate from her children." Appellant characterizes the "results" as the birth of a child; however, because the trial judge was aware of the sexual relationship between appellant and Mr. Hanshaw when the origi-

nal decree was entered, such a result could not have been unanticipated and so could not constitute a change of circumstances. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). Appellee further proposes that "[o]ne can try to lessen the impact by appealing to the better angels of our nature and pointing out that [a]ppellant had the baby and is doing the best she can. However right those choices may be, they do not vitiate the fact that [a]ppellant made a choice, and that choices have consequences."

It appears that the choice that appellee contends constitutes a change of circumstances is the choice to continue her pregnancy and to keep the baby. We respond to this argument by stating emphatically that this court will not endorse a finding that suggests, even by implication, that failure to abort a pregnancy constitutes a change of circumstances for the purpose of custody modification.

Accordingly, we reverse and remand.

BIRD and NEAL, JJ., agree.