Margaret Lillette SMITH *v.* Robert McCRACKEN
and Leslie McCracken

CA 06-139                                         240 S.W.3d 621

Court of Appeals of Arkansas
Opinion delivered October 4, 2006

*Hamilton & Hamilton, PLLC,* by: *James A. Hamilton,* for appellant.

*The Ray Law Firm, P.A.,* by: *Michael D. Ray,* for appellee.

WENDELL L. GRIFFEN, Judge. This is an appeal from an order granting custody of K.E.E., d.o.b. 10/15/96, to appellees Leslie and Robert McCracken. The case began as a contested adoption proceeding. The McCrackens sought to adopt K.E.E, who is Leslie's great-niece. Appellant Margaret Smith, who is also K.E.E.'s great-aunt, had been named as the child's guardian by virtue of unlimited letters of guardianship from Indiana. Smith, who did not have full-time physical custody of the child, contested the adoption and counterclaimed to adopt K.E.E. Because the circuit court determined that the notice to the biological parents was procedurally infirm, it denied both adoption petitions, treated the matter as a custody issue, and awarded custody to the McCrackens. Smith now appeals, arguing that because the case began as an adoption proceeding, the circuit court, sitting in probate, had no jurisdiction to enter an award of custody. We disagree and affirm the order granting custody of K.E.E. to the McCrackens.

Smith was appointed as K.E.E.'s guardian on December 10, 1999. Subsequently, the child stayed alternatively with her biological mother, Smith, and the McCrackens. On August 14, 2000, Smith executed a document stating that she transferred "temporary custody" to Leslie because it was unsafe for the child to be in the mother's custody.

Leslie married appellee Robert McCracken in June 2002, and they filed a petition for adoption in Ashley County, Arkansas, on October 14, 2004. Attached to the petition was an affidavit in

which the McCrackens stated: "[W]e need to have an order of custody so we can legally be responsible for the child." They further indicated in the same paragraph their desire to adopt K.E.E.

In Smith's answer to the adoption petition, she asserted that she was K.E.E.'s guardian and that she consented to the adoption of K.E.E. by the child's maternal grandfather (who never filed a petition to adopt). She requested that the court deny the McCrackens' petition to adopt. A temporary hearing was conducted to determine in whose custody K.E.E. should remain until the hearing on the adoption petition was conducted. (At the time of the hearing, K.E.E. was staying with her mother.) During this hearing, the circuit court noted that a petition for adoption had been filed and that a request had also been made "for a hearing on custody." The court stated that it set the temporary hearing on custody pending the final hearing only. At this point, Smith objected, asserting that because the matter was a probate matter, the "probate court," being a court of limited jurisdiction, could not deal with custody issues. The court overruled the objection, citing to Amendment 80 of the Arkansas Constitution and to its belief that it could deal with temporary custody pending a final hearing in the case.[1]

The court recognized the parties' August 14, 2000 custody agreement and continued custody in appellees. In response, Smith filed a counterclaim for adoption, asserting that the biological mother had consented to Smith's adoption of K.E.E.

The final hearing was held on May 10, 2005. Smith did not at this point challenge the circuit court's jurisdiction to determine the issue of custody. The court heard testimony from various witnesses regarding who should be K.E.E's legal custodian and whether either of the petitions to adopt should be granted. The court first responded to the parties in a November 3, 2005 letter, stating that it considered treating the matter as a guardianship, but due to the procedural infirmities regarding notice to the biological

---

[1] The court also erroneously stated that "the legislature has specifically given the probate court the authority to grant visitation." The error is two-fold. First, there are no longer any "probate courts" in Arkansas after the passage of Amendment 80, and second, probate proceedings, as defined under Arkansas law, do not expressly encompass visitation or custody determinations. *See* Ark. Code Ann. § 28-1-104 (Repl. 2004). Nonetheless, we affirm because the circuit court otherwise had jurisdiction to make the custody determination in this case.

parents, it treated the matter as a custody issue. In its final order, the court dismissed both adoption petitions due to the procedural infirmities and expressly elected to treat the matter as a custody matter. It granted custody to the McCrackens and granted visitation to Smith.

The sole issue now before us is whether the circuit court had jurisdiction to enter a custody order once it dismissed the adoption petition.[2] We affirm the order awarding custody to the McCrackens based on the express terms of Amendment 80, Administrative Order Number 14, and our previous holding in *Moore v. Sipes*, 85 Ark. App. 15, 146 S.W.3d 903 (2004).

Smith's main argument is that Amendment 80 to the Arkansas Constitution did not confer upon a trial court, sitting in the probate division, the "expanded jurisdiction" to treat a matter that began as an adoption matter as a custody issue. For support of this proposition, she cites to *First National Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005) (reversing where the trial court improperly submitted an equitable issue to the jury because Amendment 80 did not alter the scope of a party's right to a jury, which is limited to cases at law), and *Arkansas Professional Bail Bondsman Licensing Board v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002) (reversing where the circuit court enjoined a State licensing board, where no court of equity prior to Amendment 80 would have had the power to enjoin the board).

Smith correctly notes that the statute that defines the jurisdiction of probate proceedings includes adoption determinations but not custody proceedings. *See* Ark. Code Ann. § 28-1-104 (Repl. 2004). She also correctly notes that nothing under the adoption code, at Arkansas Code Annotated section 9-9-101 *et seq.*, authorizes a circuit judge, sitting in the probate division in an adoption case, to make an award of custody if the adoption proceeding fails. Thus, Smith argues that because Amendment 80 did not expand the jurisdiction of probate courts, because probate courts are not expressly authorized to make custody determinations, and because adoptions are probate matters, the circuit court

---

[2] Smith cursorily asserts that if the circuit court had jurisdiction to treat the issue as a custody issue, then the court should have awarded custody to her. However, she offers no support for this argument, and it is not part of her argument in her single-point heading. Hence, we do not treat it as a properly-preserved challenge to the sufficiency of the evidence supporting the circuit court's order.

had no power to take any further action in this case once it dismissed the adoption petition. She asserts that "once the adoption proceedings were dismissed, the case was over."

We disagree with Smith's restrictive and erroneous characterization of the powers that may be exercised by a circuit court following Amendment 80. Amendment 80 merged in Arkansas what were once chancery and circuit courts into circuit courts, so that any circuit court would thereafter have jurisdiction "over *all matters* previously cognizable by Circuit, Chancery, Probate, and Juvenile Courts." *See* Amend. 80 § 19(B)(1) (emphasis added). Amendment 80 § 6(A) provides that circuit courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution. Section 6(B) of this same amendment allows the division of the circuit court into subject-matter divisions and provides that *any judge* within the circuit may sit in *any division*.

In turn, Administrative Order Number 14 regulates the administration of circuit courts and established the following subject matter divisions: criminal, civil, juvenile, probate, and domestic relations. *See* Admin. Order No. 14(1)(a). This order defines "probate" to include adoptions and defines "domestic relations" to include custody. *See id.* However, Order 14(1)(a) also states:

> *the designation of divisions* is for the purpose of judicial administration and caseload management and *is not for the purpose of subject-matter jurisdiction.* The creation of *divisions shall in no way limit the powers and duties of the judges to hear all matters within the jurisdiction of the circuit court.*

(Emphasis added.)

We are convinced that the purpose of Amendment 80 was to eliminate the artificial distinctions regarding a circuit court's jurisdiction that Smith would have us reimpose. Pursuant to Amendment 80, circuit courts simply have added to their already existing jurisdiction as courts of law the equitable jurisdiction that chancery courts held prior to adoption of the amendment. *See Cruthis, supra.* As the Arkansas Supreme Court stated in regard to the passage of Amendment 80: "Jurisdictional lines that previously forced cases to be divided artificially and litigated separately in different courts have been eliminated." *Id.* at 533, 203 S.W.3d at 91.

In other words, a circuit court may now exercise any act of jurisdiction that *either* a court of law or equity could have exercised prior to Amendment 80, and further, the designation of an action as a specific type of action does not prevent a circuit court from hearing any matter within the court's jurisdiction that is properly raised to the court. In this case, the issue of custody was before the circuit court because the McCrackens requested custody of K.E.E., as well as the right to adopt her. Accordingly, the circuit court had the power to determine custody of K.E.E. after it dismissed the adoption petitions.

While Smith is correct that probate jurisdiction does not expressly include the power to make custody determinations, her argument ignores the fact that *the circuit judge was not limited to probate jurisdiction* in determining what the best interest of K.E.E. Rather, using its jurisdiction to determine adoption issues, it dismissed both adoption petitions. The dismissal of the adoption petitions did not somehow divest the circuit court of its jurisdiction to make the necessary custody determination regarding K.E.E., where the trial court recognized that the custody issue had been raised by the McCrackens in the affidavit attached to their petition for adoption, and where the trial court heard evidence that would allow it to make a custody determination. Clearly, the same evidence relating to whether either adoption petition should be granted based on the best interest of the child would also support a custody determination.

While our courts have not addressed the precise situation that we have in the instant case, this court has examined the relationship of Amendment 80 to probate and custody cases, in *Moore v. Sipes, supra.* We find that case to be dispositive of the issue in the instant case. In *Moore,* we explicitly rejected the argument that the "probate court" had no jurisdiction to enter a guardianship order because the case should have been determined as a juvenile dependency-neglect case or as a custody case. We noted:

> Since the implementation of Amendment 80, circuit court jurisdiction includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. . . . Probate proceedings, as well as juvenile and chancery proceedings, often concern matters of child custody and parental rights. Custody suits and guardianship petitions involving minors are similar in that each may limit parental rights and may award custody based on the best interest of the child. . . . Thus, custody determinations may be made in both types of

cases. In numerous instances, our courts have made what amount to custody determinations involving minors in the context of a guardianship proceeding.

*Id.* at 20, 146 S.W.3d at 906-07.

The same reasoning applies here — if custody determinations may be made in conjunction with guardianship proceedings, they may just as readily be made in conjunction with adoption proceedings. Like guardianship proceedings, adoption proceedings are probate proceedings that necessarily impact matters of custody and parental rights — if an adoption petition is granted, a parent's rights with regard to that child are forever foreclosed. However, if the adoption petition fails, as in this case, the circuit court must ultimately determine where the child is to live and which parties are responsible for the child's well-being.

Because a circuit court has jurisdiction to determine custody issues, it is not required to keep a child and the would-be custodians in legal limbo until they file yet another petition requesting a custody determination. The dismissal of the adoption petitions in this case did not resolve the issue of the best interest of the child because the prior custody order the circuit court had entered in this case was a *temporary* order. Just as a circuit court retains jurisdiction over custody or visitation issues in a divorce case, *see Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000), the circuit court here retained jurisdiction over the custody issue that had not been resolved. It then exercised its jurisdiction to enter a custody order which, on the merits, is not challenged in this appeal.[3]

Finally, the *Cruthis* case and *Frawley* case cited by Smith do not compel a different result. Those decisions merely stand for the proposition that after Amendment 80, a circuit court cannot exercise jurisdiction that no court of law or equity had prior to Amendment 80. Unlike those cases, the circuit court in this case was not attempting to exercise a power that no court of law or

---

[3] If we dismissed the custody order, the temporary order granting custody to the McCrackens and visitation to Smith would be the standing order in this case. Notably, Smith does not now challenge the circuit court's jurisdiction to enter the temporary order. Further, she consistently requested "all other relief" to which she may be entitled and does not challenge the circuit court's power to grant her visitation under either the temporary order or the custody order.

equity did not possess prior to Amendment 80. In denying the adoption petition, the circuit court here clearly exercised a power that probate courts had prior to Amendment 80; in determining custody, the circuit court clearly exercised a power that chancery courts exercised prior to Amendment 80. Via Amendment 80, a circuit court is now authorized to exercise either power or both, as the circuit court properly did here.

Affirmed.

VAUGHT and ROAF, JJ., agree.