Kevin Wayne HODGE *v.* Mary HODGE

CA 06–494                                    245 S.W.3d 695

Court of Appeals of Arkansas
Opinion delivered December 20, 2006

*Talbott & Ladd, P.A.*, by: *Kathleen Talbott*, for appellant.

*Ann B. Hudson*, for appellee.

Larry D. Vaught, Judge. This is a child-custody dispute where appellant Kevin Hodge appeals the trial court's decision to award custody of his daughter to appellee Mary Hodge. Kevin argues on appeal that the trial court erred in failing to use the appropriate legal standard in changing custody, erred in not considering the presumption in favor of Kevin's relocation, and abused its discretion in changing custody from Kevin to Mary. We reverse and remand.

Mary filed for divorce from Kevin on June 2, 1997. Mary was awarded temporary custody of their daughter, B.J.H. (born on March 18, 1994), while the divorce was pending. The final, uncontested divorce decree was entered on March 5, 1998, and Mary was awarded primary custody of B.J.H. In November 1998, Kevin filed a petition for contempt alleging that Mary had denied him visitation with B.J.H. On February 23, 1999, the court entered an order admonishing Mary to comply with the court's ordered visitation but refusing to find her in contempt.

On June 1, 1999, Kevin filed a petition to change custody, and on January 14, 2000, the court held a hearing on the petition. Testimony at the hearing established that Kevin had remarried; that Kevin was not being allowed his court-ordered visitation; that the child had suffered from severe emotional and psychological problems; that Mary had moved three times in three years; that Mary had trouble controlling B.J.H.'s behavior, including instances where six-year-old B.J.H. had attacked her mother; that a psychiatrist had put B.J.H. on prescription drugs for her condition; that Kevin had not been allowed to participate in his child's medical treatment; and that Mary was currently living in a HUD apartment. The court granted Kevin's petition, finding that due to a material change in circumstances, B.J.H. needed to be placed in his custody. The court stated that the change was temporary and would be reviewed during the summer of 2000. No such review was ever held.

Mary filed a petition in November 2002 for change of custody and specific visitation. The parties filed an agreed visitation order on December 6, 2002, setting out Mary's specific visitation, and reaffirming all other provisions of the January 2000 order.

In February 2005 Kevin filed a motion to modify the visitation and for child support based on the fact that he was being relocated from Little Rock Air Force Base in Jacksonville, Arkansas, to Barksdale Air Force Base in Shreveport, Louisiana. Mary responded by filing a petition for change of custody. Kevin argued that the January 2000 custody order was a permanent order, requiring a material change in circumstances to modify, while Mary argued that the order was temporary, therefore only requiring a best-interests analysis. The court held that the order was temporary and that it was in the child's best interest for Mary to be granted custody.

In child-custody cases, the primary consideration is the welfare and best interest of the child involved. *Bernal v. Shirley*, 96 Ark. App. 148, 239 S.W.3d 11 (2006). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Id.* In cases involving child custody and related matters, we review the case de novo, but we will not reverse a trial judge's findings in this regard unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Id.* However, a trial court's conclusion on a question of law is given no deference on appeal. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006).

For his first point on appeal, Kevin argues that the court used the wrong legal standard in analyzing the custody determination.[1] The trial judge determined that because the January 2000 order awarding custody to Kevin was temporary, it was not necessary for

---

[1] The dissent goes to great lengths in arguing that neither the permanent versus temporary nature of the order nor the relocation presumption was preserved. We are satisfied that the record reflects that appellant argued that the order was permanent and that the trial court ruled that it was temporary. However, the issue before us is whether the court used the proper legal standard in making a custody determination. With regard to the *Hollandsworth* presumption on relocation, we are not reversing on that issue, but instructing the court to consider it on remand.

Mary to prove a material change in circumstances in order for the court to modify the custodial arrangement.

In *Chancellor v. Chancellor*, 282 Ark. 227, 667 S.W.2d 950 (1984) — a case involving whether a custody order was a final, appealable order — our supreme court held that regardless of the "label" attached to an order, where the parties have completed their proof and submitted their matter to the court, the order is final. *See also Walker v. Eldridge*, 219 Ark. 594, 243 S.W.2d 638 (1951). However, our supreme court has also stated that there is, in effect, no "final order" in a custody case, until the children have reached the age of majority and that all custody orders are temporary by their very nature. *Purtle v. Comm. on Prof'l Conduct*, 317 Ark. 278, 878 S.W.2d 714 (1994).

In *Tipton v. Aaron*, 87 Ark. App. 1, 185 S.W.3d 142 (2004), we reviewed a case where maternal grandparents had temporary custody of the child because the unmarried parents were minors. There, we stated that:

> Usually, when we address cases involving change of custody, a child is being moved from one parent to another. In those cases, the original decree is a final adjudication that one parent or the other was the proper person to have care and custody of the children. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *White v. Taylor*, 19 Ark. App. 104, 717 S.W.2d 497 (1986). For a change of custody, the chancellor must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, he must then determine who should have custody with the sole consideration being the best interest of the children. *Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). This court has further held that its reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001). Of course, whether an initial proceeding or a modification proceeding, the polestar remains the best interest and welfare of the child. *Id.*

*Tipton*, 87 Ark. App. at 6, 185 S.W.3d at 145.

■ A temporary-custody order is often entered during a pending divorce or other action until a time when the court can further review the issue and make a final custody decision. In this case, the January 2000 order was not entered into during a pending action. Rather, an initial-custody determination had already been made in May 1998 granting Mary custody. The 2000 order modified the initial determination — relying on the material-change standard — and granted custody to Kevin. Under the specific facts of this case the court erred by finding that the January 2000 order was still a temporary order. The order on its face had a temporal limit to its temporary nature. Although the court planned to review the 2000 order a few months later, it never did so, and Mary never asked the court to review the order. Two years later, Mary petitioned for a change of custody, arguing that a material change in circumstances warranted a change of custody. Although she argues that the 2000 order was and still is a temporary order, she nonetheless asserted the permanent-order standard in her 2002 petition. Every change of custody after that initial determination in 1998 — whether denoted temporary or permanent — was a modification of custody and required a showing of material change of circumstances. This determination fits with the public policy that provides the basis for the material-change standard to begin with — consistency and stability in a child's life and prevention of re-litigation of issues before the court.

Because we hold that the January 2000 order was indeed a permanent order, we reverse and remand this case to the trial court for it to determine if a material change in circumstances supported a change of custody from Kevin to Mary. In determining that issue, the trial court is charged with analyzing the factors outlined in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), on the relocation issue and determining what is in the child's best interest.

Reversed and remanded.

ROBBINS, NEAL, and CRABTREE, JJ., agree.

HART and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I dissent from the majority's conclusion that the temporary award of custody in this case somehow underwent a metamorphosis that changed it from a temporary order into a permanent decree of custody. The trial judge accurately identified the temporary nature of the pending order,

accurately articulated the applicable legal standards, and applied those standards appropriately to the specific facts of this case.

When the trial court temporarily placed custody of the child with the father, he withheld a determination of the best interests of the child which was proper given the temporary nature of the placement. *See Smith v. McCracken*, 96 Ark. App. 270, 240 S.W.3d 621 (2006) (holding that dismissal of adoption petitions did not resolve the issue of the best interest of the child because the prior custody order the circuit court had entered in case was a *temporary* order). The trial court in this case explained that it had awarded the father temporary custody in order to give the custodial mother the opportunity to improve her housing and financial situation. This approach was entirely proper for the trial judge to employ and, in fact and practice, is in compliance with our precedents wherein our appellate courts consistently refuse to modify custody merely because one parent has more resources or income. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003); *Blair v. Blair*, 95 Ark. App. 242, 235 S.W.3d 916 (2006); *Malone v. Malone*, 4 Ark. App. 366, 631 S.W.2d 318 (1982).

The majority embraces the fact that a review hearing contemplated by the trial court did not occur and uses that fact to support its conclusion that the temporary order became permanent. This court specifically rejected the premise that the failure of a trial court to hold an anticipated hearing renders the temporary order a permanent one. In *Arkansas Department of Human Services v. McManus*, 91 Ark. App. 1, 207 S.W.3d 589 (2005), DHS asserted that the ex parte order granting temporary custody was appealable, claiming that it was a mandatory injunction and that, when the trial court failed to have a hearing on appellant's motion and did not set aside its order of temporary custody, the order became permanent for all practical purposes. DHS maintained that this matter was somewhat similar to the situation in *Walker v. Eldridge*, 219 Ark. 594, 243 S.W.2d 638 (1951), in that there was no trial on the merits of the case that was pending. We disagreed and held that the ex parte order, as it was entered in the original divorce action, was not a final appealable order.

The majority's holding that the temporary custody order in this case at some undetermined point became a permanent and appealable decree of custody conflicts with our supreme court's rulings on the appealability of temporary orders in custody cases. I recognize that historically, cases which focused on the appealability of custody orders concerning children held that a decree

awarding or changing custody of children is a final decree from which an appeal may be taken. *See Wood v. Wood*, 226 Ark. 52, 287 S.W.2d 902 (1956); *Walker v. Eldridge*, 219 Ark. 35, 240 S.W.2d 43 (1951). However, beginning with the decision in *Chancellor v. Chancellor*, 282 Ark. 227, 667 S.W.2d 950 (1984), and later in *Sandlin v. Sandlin*, 290 Ark. 366, 719 S.W.2d 433 (1986), our supreme court modified that rule such that a temporary order of custody is not appealable if further presentation of proof on the issue of custody is contemplated.

Not all jurisdictions follow the rule as set forth by our supreme court. The Connecticut supreme court in *Madigan v. Madigan*, 620 A.2d 1276 (Conn. 1993), rejected our supreme court's approach to the appealability of a temporary custody order. The Connecticut court held that temporary custody orders are final judgments that are immediately appealable because an immediate appeal is the only reasonable method of insuring that important rights surrounding the parent-child relationship are adequately protected. The Connecticut court reasoned:

> An inquiry into the law of other jurisdictions supports our conclusion that temporary custody orders are immediately appealable. Although a number of jurisdictions have held that such orders are not immediately appealable, emphasizing the broad rule that interlocutory orders must await the end of an action to be appealed; see, e.g., *Chancellor v. Chancellor*, 282 Ark. 227, 230, 667 S.W.2d 950 (1984); *In re Temporary Custody of Five Minors*, 105 Nev. 441, 443, 777 P.2d 901 (1989); *Craft v. Craft*, 579 S.W.2d 506, 508 (Tex.App.1979); others recognize that temporary orders may be appealed pursuant to local rules recognizing interlocutory appeals. See, e.g., *Sanchez v. Walker County Department of Family & Children Services*, 235 Ga. 817, 818, 221 S.E.2d 589 (1976); *In re Marriage of Kitchen*, 126 Ill. App.3d 192, 194-95, 81 Ill.Dec. 644, 467 N.E.2d 344 (1984). Likewise, a limited number of jurisdictions recognize temporary custody orders as final for the purpose of immediate appeal. See, e.g., *In re Interests of L.W.*, 241 Neb. 84, 486 N.W.2d 486, 495 (1992); *In re Murray*, 52 Ohio St.3d 155, 159-61, 556 N.E.2d 1169 (1990). On balance, we find that the rationale for allowing immediate appeals adopted in the latter jurisdictions, in conjunction with the practice in other jurisdictions that allow these appeals by special interlocutory appeals rules, to be more persuasive than the traditional reasons of judicial economy generally offered as a justification to adhere to a rule of nonappealability.

*Madigan supra* at 1279 n.9.

While the supreme court of Connecticut is free to reject our supreme court's precedent, we are not. We have no authority to overrule our supreme court on this issue. Even if we did have the authority, the majority's decision raises due process concerns. Appellee could not have known at what point the temporary order would ripen into a final decree of custody under the majority's analysis so her right to appeal was lost. In this case the trial court correctly found that the previous custody order was temporary and the question before him was the best interest of the child. After the proof was presented, the trial court set out detailed findings supporting his decision that it was in the best interest of the child to place custody with appellee. We should affirm.