Cite as 2023 Ark. App. 269

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-218

| | |
|---|---|
| MCDERMOTT BRANDON PROPERTIES, LLC<br>　　　　APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>ELIZABETH WHEELER<br>　　　APPELLEE/CROSS-APPELLANT | OPINION DELIVERED MAY 10, 2023<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CV-20-492]<br><br>HONORABLE CHARLES E. CLAWSON III, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL |

## ROBERT J. GLADWIN, Judge

This appeal arises from an order and judgment following a bench trial wherein the Faulkner County Circuit Court granted the counterclaim of appellee/cross-appellant Elizabeth Wheeler ("Wheeler") quieting title to the real property in question; ordered appellant/cross-appellee McDermott Brandon Properties, LLC ("McDermott"), to provide Wheeler the warranty deed to the property and title insurance thereon; and granted compensatory damages to Wheeler in the amount of $30,000. The circuit court dismissed McDermott's amended complaint with prejudice. McDermott filed a timely appeal, and Wheeler cross-appealed the circuit court's ruling regarding attorney's fees and costs. We affirm the circuit court's order.

## I. *Background Facts*

On June 3, 1994, Elizabeth Wheeler and John Dixon entered into a contract with Harry McDermott, Jr., and William A. Brandon—as trustees—to purchase a tract of land in Faulkner County, Arkansas. Wheeler and Dixon agreed to a purchase price of $24,000 with payments of $232 a month plus interest at 8.5 percent per annum until the balance was paid off. The contract was for a term of fifteen years and included 10.5 acres of land. On January 19, 1996, Dixon released his ownership interest in the property; however, he continued to live on the property with Wheeler—as husband and wife—until Dixon passed away in 2019.

On May 5, 2005, Harry McDermott, Jr., sent a letter to Wheeler indicating that she must begin making payments immediately because he had received notice that her bankruptcy had been dismissed. On June 21, 2005, another letter was sent to Wheeler stating that Harry McDermott, Jr., had received her payment; however, because payments were "so far behind," the amount paid would not even cover the contract's accrued interest. Furthermore, the letter proposed that Wheeler release five of the ten acres and that a new contract be drawn up to reflect the revision. The May 25 and June 21 letters were sent to two different addresses, and there is nothing in the record to verify whether Wheeler received the correspondence; however, an amended contract was not executed by the parties. Wheeler contends that from June 3, 1994, through January 2, 2010, she, Dixon, and their son, Eric Wheeler, made payments on the contract. It is undisputed that the last payment Wheeler made on the contract was on January 2, 2010. During such time, Wheeler continued to live on and make improvements to the property. While Wheeler concedes that

2

payments might have been sporadic at times for various reasons, she alleges that the contract price was paid in full as of the date of her last payment in 2010.

In the meantime, William A. Brandon passed away in 2000, and Harry McDermott, Jr., passed away in 2015. After the death of Harry McDermott, Jr., the successors of both former trustees formed McDermott Brandon Properties, LLC, to consolidate, maintain, and run the joint-venture business. As a result, all of the joint-venture contracts were transferred and assigned to the appellant.

On March 5, 2020, Wheeler received a letter from appellant's attorney—who is also a member of McDermott—alleging that she had breached her contract by nonpayment and demanded that she vacate and remove all her belongings from the property by March 30, 2020. Wheeler refused to vacate the property.

## II. *Procedural History*

McDermott filed a complaint for breach of contract and unlawful detainer on April 1, 2020. In response, Wheeler filed an answer and counterclaim for breach of contract; alleged that she was the equitable owner of the property; and asserted the affirmative defenses of payment, statute of limitations, laches, waiver, estoppel, unclean hands, and unjust enrichment. McDermott filed an amended complaint on September 9, 2020, in which it alleged breach of void contract because Wheeler and Dixon entered into the contract during the pendency of their Chapter 13 bankruptcy and did not obtain approval by the bankruptcy court.

Both parties filed competing motions for summary judgment, and the court held a hearing on the motions on May 13, 2021. The court granted summary judgment to McDermott and ordered that McDermott had the right to immediately possess the property in question. Furthermore, the court held that McDermott was entitled to a writ of possession and set a hearing on damages for June 22, 2021.

On June 21, Wheeler filed a motion for joinder of indispensable party and motion to reconsider the court's order of summary judgment in favor of appellant. Wheeler alleged that upon further investigation, she discovered McDermott did not own title to the south 5 acres of the subject property because on December 14, 2018, McDermott deeded that portion of the property to Charles Scott Valentine and Terri Lynn Valentine ("the Valentines"). Wheeler maintained that McDermott had committed a fraud upon the court and that the action should be stopped immediately to allow Wheeler to join the Valentines as indispensable parties pursuant to Arkansas Rule of Civil Procedure 19. Additionally, Wheeler asked the court to reconsider and revise its ruling granting summary judgment to McDermott in light of the newly discovered evidence. On June 22, 2021, the court held the hearing on damages, and after opening statements of counsel, the court concluded that the newly discovered evidence placed its previous ruling into question. Accordingly, the court reversed its summary-judgment ruling and instructed the parties to submit a scheduling order in preparation for trial.

On September 20, 2021, Wheeler filed an amended counterclaim for breach of contract and included a claim for appellant's unlawful sale of the south 5 acres of the

4

property to the Valentines. McDermott's answer to the amended counterclaim contended that the circuit court lacked jurisdiction to adjudicate title in an unlawful-detainer proceeding. On November 18, 2021, the circuit court held a bench trial. The court heard allegations on both McDermott's and Wheeler's claims, and both sides presented witnesses. After testimony concluded, the circuit court denied McDermott's unlawful-detainer claim, specifically noting that appellant's sale of a portion of the property in 2018 to the Valentines had "reframed" the case. The circuit court granted Wheeler's breach-of-contract and quiet-title claims. On January 19, 2022, the court entered its order and judgment dismissing McDermott's amended complaint as barred by the statute of limitations and the doctrine of laches as well as failure to submit sufficient records to prove its allegation of Wheeler's nonpayment. In granting Wheeler's counterclaim, the court ordered (1) $30,000 to be paid by McDermott for its act of wrongfully selling 5 acres of the 10.5-acre property to the Valentines; (2) title to the remaining 5.5 acres to Wheeler; and (3) title insurance to be paid by McDermott. The court ordered that both parties were responsible for their own costs and attorney's fees.

Both parties filed motions for reconsideration, which were denied by the circuit court. Thereafter, McDermott filed a timely notice of appeal on January 20, 2022, and Wheeler filed a timely cross-appeal notice on February 3, 2022. This appeal followed.

III. *Standard of Review*

Following a bench trial, an appellate court asks whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence and reviews

5

questions of law de novo. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, at 6, 602 S.W.3d 726, 730. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id.* We must give recognition to the circuit court's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *S. Bldg. Servs., Inc. v. City of Ft. Smith*, 2013 Ark. App. 306, 427 S.W.3d 763. This court reviews the circuit court's conclusion of law de novo. *Houston v. Houston*, 67 Ark. App. 286, 999 S.W.2d 204 (1999).

### IV. *Points on Appeal*

On appeal, McDermott argues the following: (1) the circuit court erred in failing to follow well-established Arkansas law when it granted appellee a breach-of-contract and quiet-title judgment in an unlawful-detainer action; (2) the circuit court abused its discretion or erred in reversing its summary-judgment decision after being advised that McDermott sold one-half of the property in dispute to a third party before filing the unlawful-detainer action; and (3) the court erred by ruling laches prevented it from filing an unlawful-detainer lawsuit ten years after Wheeler's last contract payment.

On cross-appeal, Wheeler argues that the circuit court abused its discretion by denying her request for attorney's fees and costs.

### V. *Discussion*

### A. Jurisdiction

6

First, McDermott contends the circuit court only had jurisdiction to dismiss the unlawful-detainer complaint or to eject Wheeler from the property. Appellant maintains that the only issue properly before the court was who had the right to possess the property, not who possessed legal title. At trial, McDermott alleged that the sale of the 5 acres to the Valentines in 2018 was irrelevant to its claim for unlawful detainer and specifically argued that "the only thing different is that we've got five acres that [Wheeler's] sitting on where she shouldn't be instead of 10." Accordingly, appellant argues that the circuit court erred in awarding Wheeler damages for breach of contract and title to the property. In response, Wheeler claims that with the passage of amendment 80 to the Arkansas Constitution there is no longer a mandated separation of cases at law and cases sounding in equity; therefore, the circuit court properly addressed the unlawful-detainer claim and counterclaim in the same action.

The question of jurisdiction is considered de novo on appeal. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, 549 S.W.3d 901. Unlawful detainer is a limited remedy intended to give one claiming ownership of land a summary means of ousting an individual in possession. *Webb v. Herpin*, 217 Ark. 826, 233 S.W.2d 385 (1950). Pursuant to Arkansas Code Annotated section 18-60-308 (Repl. 2015), in trials for unlawful detainer, title to the premises in question shall not be adjudicated upon or given in evidence, except to show the right to possession and extent thereof. McDermott cites section 18-60-308 to support its argument that the court erred by granting relief to Wheeler for breach of contract. Fundamentally, McDermott asserts that Wheeler was allowed to assert breach of contract as

7

an affirmative defense to the unlawful-detainer action, but the court could not, in turn, adjudicate title, grant specific performance, or grant any additional relief to appellee. McDermott's argument, however, entirely ignores the fact that its complaint asserted claims for unlawful detainer and breach of contract. Further, while McDermott amended its complaint to declare that the contract was void—presumably in an effort to prevent Wheeler's breach-of-contract counterclaim from being litigated—the amended complaint sounds in contract. Consequently, McDermott's assertion that this case hinges solely on possession of property is false.

More importantly, McDermott's objection to jurisdiction was specifically eradicated by amendment 80 to the Arkansas Constitution in 2001. Amendment 80 merged chancery and circuit courts. As a result of the amendment, circuit courts simply added to their already existing jurisdiction as a court of law the equitable jurisdiction that chancery courts held prior to the effective date of the amendment. *See First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). Therefore, a circuit court may exercise any act of jurisdiction that either a court of law or equity could have exercised prior to amendment 80, and further, the designation of a specific type of action does not prevent a circuit court from hearing any matter within the court's jurisdiction that is properly raised. *See Smith v. McCracken*, 96 Ark. App. 270, 240 S.W.3d 621 (2006). Accordingly, McDermott's argument is meritless; the circuit court did not err in awarding Wheeler damages and title to the property pursuant to her counterclaim, which involved claims separate and apart from McDermott's cause of action.

8

## B. Summary-Judgment Order

For its second point on appeal, McDermott argues that the circuit court erred by reversing its prior order granting summary judgment in McDermott's favor. McDermott asserts that the court's order reversing its prior ruling is appealable because it "effectively decided the trial on the merits." We disagree.

As a preliminary matter, it must be determined whether this issue is properly before the court. Ordinarily, the denial of a motion for summary judgment is not reviewable or appealable. *See Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996). This court does review denials of orders for summary judgment in limited circumstances—such as those where the denial implicitly grants the dismissal order—however, that is not the situation here. *See Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n, Inc.*, 82 Ark. App. 28, 110 S.W.3d 325 (2003); *Shelter Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000); *Karnes v. Trumbo*, 28 Ark. App. 34, 770 S.W.2d 199 (1989). Here, denial of summary judgment in favor of McDermott was not the impetus for the dismissal of the case. On the contrary, a trial on the merits on both the complaint and counterclaim was held after entry of the court's order reversing its prior ruling. Accordingly, we decline to reach the merits of this issue on appeal.

## C. Laches

For its final argument, appellant argues that the circuit court erred by ruling that the affirmative defense of laches prevented it from filing an unlawful-detainer lawsuit ten years after Wheeler's last payment. Throughout the litigation, Wheeler consistently raised the

9

affirmative defenses of laches, estoppel, and waiver. After trial, the circuit court held that the doctrine of laches applied because McDermott's unreasonable delay was detrimental to Wheeler and her ability to mount any sort of defense. Specifically, the court held that McDermott's inaction for more than ten years reasonably caused Wheeler and her husband—who passed away in 2019—to believe that McDermott's rights were "worthless or had been abandoned." Consequently, the court held that McDermott waived its right to pursue or defend this cause of action.

In order to apply the doctrine of laches, it must be shown that there was an unreasonable delay in asserting some right and because of the delay, the party claiming the protection of laches changed his position to his detriment so as to make it inequitable to enforce the asserted right. *Hendrix v. Hendrix*, 256 Ark. 289, 506 S.W.2d 848 (1974); *Williams v. Grayson*, 224 Ark. 207, 273 S.W.2d 844 (1954). We will affirm a circuit court's factual findings unless they are clearly erroneous or clearly against the preponderance of the evidence. To determine whether the doctrine of laches applies, each case must be governed by its own facts. *See Neal v. Stuckey*, 202 Ark. 1119, 155 S.W.2d 683 (1941). The doctrine rests upon the principle that if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Id.*

Here, it is undisputed that Wheeler's last contract payment was made in 2010, and from then until 2020, McDermott had no contact with Wheeler until it served her with an eviction notice. By 2020, three of the four parties to the contract were deceased, including Dixon, who Wheeler testified handled their finances during his lifetime. At trial,

10

McDermott called a variety of witnesses to the stand, none of whom could testify with any certainty regarding the contract payments received or lack thereof from Wheeler, Dixon, or their son, Eric. In fact, the general consensus was that the file McDermott kept on Wheeler was empty, and the only documentation it had in its possession included twenty-four money orders—reflecting payments between 2005 and 2010—that Wheeler sent to McDermott after she had received the eviction notice. Wheeler alleged that she had been prejudiced by McDermott's choice to delay filing suit, and if McDermott had come forth earlier, she would have been in a better position to prove ownership to the property. In addition, she testified that her husband would have been alive to testify to the payments he made, and she would also have had receipts to verify payments. Wheeler further maintains that she discarded payment records after preserving the documents for more than seven years.

The circuit court held that Wheeler was "left with both hands tied behind her back without the payment records that were purged and without her husband's testimony as to payments that were made, or whatever agreements he may or may not have had with the plaintiff's predecessor in title." Furthermore, the court held that McDermott failed to provide sufficient records to prove its allegations of nonpayment. We accord great deference to a circuit court's findings of fact; mindful that the circuit court is in the best position to hear testimony and determine the credibility of the witnesses. *Save Energy Reap Taxes v. Shaw*, 374 Ark. 428, 435, 288 S.W.3d 601, 604 (2008). It is this court's duty to reverse if its own review of the record is in marked disagreement with the circuit court's findings. *Dopp v. Sugarloaf Mining Co.*, 288 Ark. 18, 702 S.W.2d 393 (1986) (citing *Rose v. Dunn*, 284 Ark. 42,

11

679 S.W.2d 180 (1984); *Walt Bennett Ford v. Pulaski Cnty. Special Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981)). The facts herein clearly support an application of the affirmative defense of laches. Furthermore, the circuit court placed great weight on Wheeler's testimony, and it is not the province of this court to second-guess the circuit court's credibility determinations or the weight accorded to such testimony. Thus, we affirm the circuit court's application of laches in dismissing McDermott's complaint.

## D. Cross-Appeal

Wheeler cross-appeals the circuit court's finding that both parties must bear their own attorney's fees and costs. The circuit court denied Wheeler's motion for reconsideration; however, Wheeler contends that the circuit court is required to give some explanation for its denial of fees.

The general rule relating to attorney's fees is well established: attorney's fees are not allowed except when expressly provided by statute. *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). Arkansas allows a prevailing party in a breach-of-contract case to recover reasonable attorney's fees. Ark. Code Ann. § 16-22-308 (Repl. 1999). The statute provides:

> In any civil action to recover on . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

The word "may" in the statute implies permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense. *Chrisco*, 304 Ark. at 229, 800

12

S.W.2d at 718.  A circuit court, therefore, is not required to award attorney's fees under this statute, and any amounts awarded are discretionary. *Conway Com. Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, 381 S.W.3d 94.  Furthermore, because of the circuit court's intimate acquaintance with the trial proceedings, this court usually recognizes the superior perspective of the circuit court in determining whether to award attorney's fees. *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001).  A decision of whether to award statutory attorney's fees will not be disturbed on appeal absent an abuse of discretion. *Id.*

Given the discretionary nature of attorney-fee awards and our standard of review, we conclude that the circuit court did not abuse its discretion in ruling that each party was responsible for its own fees and costs.

VI.  *Conclusion*

We affirm the circuit court's order in all aspects.

Affirmed on direct appeal and on cross-appeal.

HARRISON, C.J., and WOOD, J., agree.

*Harry McDermott*, for appellant.

*Robert S. Tschiemer*, for appellee.