Victoria MOORE *v.* L.C. SIPES and Lois Sipes

CA 03-687 146 S.W.3d 903

Court of Appeals of Arkansas
Division II
Opinion delivered February 4, 2004

*Cross, Kearney & McKissic*, by: *Jesse L. Kearney*, for appellant.

*Noel F. Bryant, P.A.*, for appellees.

R OBERT J. GLADWIN, Judge. Appellant Victoria Moore appeals from an order appointing appellees L.C. and Lois Sipes guardians of her two minor children. She makes four arguments: 1) the trial court had no jurisdiction in this matter; 2) venue was not proper in Jefferson County; 3) the trial court failed to timely consider her habeas petition; 4) the trial court erred in appointing appellees as guardians for the boys. We reverse and remand on the fourth ground.

Appellant, who lives in North Little Rock, is the mother of Kenneth Sipes, born in 1989, and Stephen Sipes, born in 1990. Appellees, who live in Pine Bluff, are the boys' paternal grandparents. The boys' father is Larry Sipes, from whom appellant was divorced in 1995. There is no evidence that, since the divorce, Larry Sipes has supported the children, visited them, or been a part of their lives. He did not participate in this lawsuit.

On October 18, 2002, appellees filed a petition in Jefferson County Circuit Court, asking to be appointed guardians. The boys had been living with appellees for approximately one month at that time and were attending school in Pine Bluff. Appellees sought guardianship based on their belief that they could provide a more stable environment for the children because appellant's frequent moves had caused the children to change schools many times. Appellant responded with a request that the children be returned to her, and she filed a petition for a writ of habeas corpus. In that pleading, she alleged that the boys' placement with appellees was temporary and that she never intended to relinquish custody.

The evidence at trial showed that, from 1998 to 2000, the boys lived with appellant in Pulaski County. Thereafter, they moved to Saline County for several months and, in late 2000, moved to Pearl, Mississippi, as the result of appellant's job transfer. In mid-2002, appellant returned to North Little Rock. In late summer of 2002, she and the boys moved to Vicksburg, Missis-

sippi, and returned to Arkansas in September or October 2002. During a portion of those times, either one or both boys lived with appellees in Pine Bluff and attended school there.

Appellee L.C. Sipes testified that Kenneth and Stephen spent a great deal of time with him and Lois after their mother's divorce, visiting every other weekend and for an extended period during the summers. Beginning in November 2001, Kenneth began spending even more time with them after appellant had moved with the boys from North Little Rock to Pearl, Mississippi. According to Mr. Sipes, appellant called and asked them to take Kenneth in and send him to school in Pine Bluff. Appellant told them that, if they could not take him, she was going to put him in a boys' school because she could no longer handle him. Appellees agreed to take Kenneth, and he lived with them and attended school in Pine Bluff from November 2001 to June 2002. During that time, he got into minor trouble, but there were no major problems with his behavior. Also during this period, appellant (and presumably Stephen) returned from Pearl, Mississippi, to North Little Rock. According to Mr. Sipes, appellant came to see Kenneth once during this period and called him several times. He also said that appellant provided appellees no monetary support during Kenneth's stay.

Appellant retrieved Kenneth in the summer of 2002 and, within a short period, moved with both boys to Vicksburg, Mississippi. The boys started school in Vicksburg, but appellant decided to move back to North Little Rock just after the school year began. According to appellees, appellant called and asked if they would enroll both boys in school in Pine Bluff for the rest of the school year. They agreed and enrolled both boys in September of 2002. Within about one month's time, appellees filed the guardianship petition that is the subject of this appeal.

Mr. Sipes explained at trial that he wanted the children to have a stable home and did not want them moving from one school district to another. He said that Kenneth's school work has improved since he began staying with appellees. Mr. Sipes also expressed concern that someone be home for the children at night. He said that, on one occasion when he had gone to pick up the children in Pearl, Mississippi, appellant told him that, while she had been at work, the children had been out of the house all night.

On cross-examination, Mr. Sipes admitted that appellant is not a bad mother, but he said that he believed the children needed a stable place to stay for more than five or six months at a time. He

also agreed with appellant's counsel that appellant's simply moving and taking the children from one place to another did not make her a bad parent.

Appellant admitted in her testimony that she had moved a great deal for the purpose of finding work and that she had been transferred to Pearl by her employer. She admitted that she had a strained relationship with Kenneth. She also said that she had discovered that Stephen had skipped school and that the children had stayed out all night one night while she was at work, despite the fact that she had made arrangements with a neighbor to check on them. However, she felt that the children would be better off with her. She said that she is now situated in North Little Rock with an adequate place for the children with beds, food, clothing, utilities, and transportation and that she and her husband Tony both work. Apparently, Stephen was already living with her at the time of the hearing and was in school in North Little Rock.

Appellant also disputed some of appellees' testimony. She said that, while Kenneth had stayed with appellees the previous year, she had seen him at least every other weekend and talked to him every week. Further, she testified that, when she permitted appellees to enroll the boys in school in September 2002, it was with the understanding that she would be back to get them when she got "straightened out" within a couple of weeks. She denied any intent to leave the children there for the entire school year.

Kenneth testified and expressed his desire to live with appellees. He said that his mother had called the police when he got into a physical altercation with her and with his maternal grandmother. He also said that his mother blamed him for things his younger brother had done and that she had left the boys alone at night occasionally without anything to eat other than Hamburger Helper or macaroni and cheese.

Following the hearing, the trial court ruled from the bench that appellant was not suitable as a guardian, stating that "the Court having heard testimony about the living conditions and the supervision of these children and the moving around and their grades in school and all of the above has a real hard time finding that [appellant] is suitable at this time as the guardian ...." The court also took into consideration Kenneth's testimony that he wanted to remain with appellees. The court then appointed appellees guardians of the persons and estates of Kenneth and Stephen and awarded appellant visitation.

Appellant argues first that the probate court had no jurisdiction in this case because jurisdiction was either in juvenile court, by way of a dependency and neglect or a Family In Need of Services (FINS) proceeding, or in chancery court by way of a custody proceeding. We disagree. Since the implementation of Amendment 80, circuit court jurisdiction includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. *See* Amendment 80, § 19(B)(1); *Administrative Order No. 14*, §§ 1(a) and (b), 344 Appx. 747-48 (2001). By statute, a circuit court is now vested with jurisdiction to appoint a guardian. *See* Ark. Code Ann. § 28-65-107(a) (Supp. 2003). Therefore, the circuit court in this case had subject-matter jurisdiction. Further, this case is not necessarily, as appellant argues, better suited for a juvenile or chancery proceeding. Probate proceedings, as well as juvenile and chancery proceedings, often concern matters of child custody and parental rights. Custody suits and guardianship petitions involving minors are similar in that each may limit parental rights and may award custody based on the best interest of the child. *See generally Robins v. Arkansas Social Servs.*, 273 Ark. 241, 617 S.W.2d 857 (1981). *See also* 4 Lynn Wardle, et al., *Contemporary Family Law* § 41.05 at 49 (1988) (stating that "when a guardianship proceeding is contested, the court must resolve the dispute according to the best interest of the proposed ward. In this, it is similar to custody after divorce.") Thus, custody determinations may be made in both types of cases. In numerous instances, our courts have made what amount to custody determinations involving minors in the context of a guardianship proceeding. *See, e.g., Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000); *Bennett v. McGough*, 281 Ark. 414, 664 S.W.2d 476 (1984); *Hooks v. Pratte*, 53 Ark. App. 161, 920 S.W.2d 24 (1996); *In re Guardianship of Markham*, 32 Ark. App. 46, 795 S.W.2d 931 (1990); *Marsh v. Hoff*, 15 Ark. App. 272, 692 S.W.2d 270 (1985); *Monroe v. Dallas*, 6 Ark. App. 10, 636 S.W.2d 881 (1982). We therefore hold that the trial court did not err in hearing the guardianship petition in this case.

Appellant argues next that venue was not proper in Jefferson County. She contends that, because she resided in Pulaski County and was the boys' legal custodian at the time the petition was filed, appellees should have filed suit in Pulaski County. *See* Ark. Code. Ann. § 28-65-202(a)(1) (1987). We hold that appellant has waived this argument. She did not object to venue at the trial level, and we do not address arguments raised for the first time on

appeal. *See generally Utley v. City of Dover*, 352 Ark. 212, 101 S.W.3d 191 (2003). Further, appellant did not object to venue in her initial responsive pleading. An objection to venue is waived if it is not raised in the defendant's answer or in a motion filed prior to or simultaneously with the answer. *Higgins v. Burnett*, 349 Ark. 130, 76 S.W.3d 893 (2002); Ark. R. Civ. P. 12(h)(1) (2003).

We now turn to appellant's argument that the trial court erred in appointing appellees guardians of her two children. We review probate proceedings de novo, but we will not reverse the decision of the trial court unless it is clearly erroneous. *Blunt v. Cartwright, supra*. When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Id.*

Before appointing a guardian, the court must be satisfied that: (1) the person for whom guardianship is sought is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interests of that person; (3) the person to be appointed guardian is qualified and suitable to act as such. Ark. Code Ann. § 28-65-210 (1987). Where the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *Blunt v. Cartwright, supra*. Preferential status may be given to the natural parents of the child under Ark. Code Ann. § 28-65-204(a) (Supp. 2003). This preference, however, is but one factor that the probate court must consider in determining who will be the most suitable guardian for the child. *Blunt v. Cartwright, supra*.

We agree with appellant that the trial court's decision to appoint appellees as guardians in this case was clearly erroneous. A preference for the natural parent must prevail in third-party guardianship cases unless it is established that the natural parent is unfit. *See Robbins v. State*, 80 Ark. App. 204, 92 S.W.3d 707 (2002). *See also Dunham v. Doyle*, 84 Ark. App. 36, 129 S.W.3d 304 (2003) (stating that the law prefers a parent over a grandparent unless the parent is proved to be incompetent or unfit); *Phifer v. Phifer*, 198 Ark. 567, 129 S.W.2d 939 (1939); *Hancock v. Hancock*, 197 Ark. 853, 125 S.W.2d 104 (1939). The evidence in this case does not support a finding that appellant was an unfit parent. This is not a situation in which appellant has engaged in egregious conduct that would call her fitness into question. She has moved a great deal, and as a result, the boys have attended a number of schools.

Further, she has not supervised them in the best manner, which allowed them to skip school and to stay out all night on one occasion. However, the evidence showed that appellant was working and was concerned about the children and trying to see to their welfare.

In those cases in which our courts have appointed a third person as a guardian over the objection of a parent, the parent has clearly been unsuitable. In *Blunt v. Cartwright, supra,* the father had only been employed one week, did not have a home of his own, had never had legal custody of the child, had failed to support her, and had physically abused the child's late mother. The supreme court affirmed the appointment of the child's maternal grandparents as guardians. In *Guardianship of Markham, supra,* the parents consented to the guardianship of their child by a paternal aunt. Six months later, the parents asked that the guardianship be terminated. The trial court declined to terminate the guardianship, and this court affirmed on the grounds that the parents had voluntarily consented to the initial guardianship, were smokers, had a somewhat stormy marriage, may have been marijuana users, and may not have cooperated in following medical recommendations for the child. In *Marsh v. Hoff, supra,* the trial court denied a relative's petition for guardianship and instead returned the child to the natural father. We reversed on evidence showing that the father maintained filthy living conditions at his home that the home, had no hot water, that the child got some of her meals from dumpsters, and that the father co-habited with a woman who threatened and cursed the child.

Appellant's conduct and lifestyle, especially in comparison to the above-cited cases, are not such that she may be considered unfit. Thus, despite the fact that appellees may be able to provide certain advantages to the children, appellant should not be deprived of custody in this case. We therefore reverse the trial judge on this point.[1]

Our ruling in appellant's favor makes it unnecessary for us to address her argument with regard to whether the trial court conducted a timely hearing of her habeas petition.

---

[1] We particularly note that there is no evidence that the guardianship would be in Stephen's best interest. Stephen has spent a great deal more time with his mother and, despite what is said in the court's order, expressed a preference to live with his mother, not with appellees.

Reversed and remanded with directions to enter an order consistent with this opinion.

STROUD, C.J., and HART, J., agree.