Emmett JONES and Frances Ann Jones  *v.*
Chester SCOTT and Barbara Scott

CA 04–10                                    211 S.W.3d 46

Court of Appeals of Arkansas
Opinion delivered June 22, 2005

*Walker, Shock, Cox & Harp, P.L.L.C.*, by: *James O. Cox*, for appellants.

*Wayland A. Parker, II*, for appellees.

Andree Layton Roaf, Judge. This is a guardianship case. Appellants Emmett and Frances Jones appeal from the Scott County Circuit Court's order granting guardianship of their two minor grandchildren to appellees Chester Scott and Barbara Scott, the paternal grandparents. On appeal, the Joneses argue that the trial court erred in finding that the children should be left in the care of the Scotts because there had been no material change of circum-

stances since the children had been left voluntarily in the Scotts' care by their mother, Sandra Scott. They also argue that the trial court erred in finding that the minor children should be left in the care of the Scotts because that decision was against the preponderance of the evidence and was not in the best interest of the children. The trial court's decision is clearly against the preponderance of the evidence and is not in the children's best interest, and we reverse and remand.

Sandra and Damon Scott are the biological parents of Leanne, now age eight, and Austin, now age six. Sandra and Damon were divorced on September 19, 2002, and Sandra was given custody of the children. After the divorce, she and her children lived in the home of her parents, the Joneses. Sandra admitted that, following her divorce, she began abusing drugs. After finding a syringe in Sandra's pocket, the Joneses confronted Sandra about her suspected drug problem. They advised her that if she had a drug problem that they would put her in a drug-rehabilitation program and care for her children while she was away. In early October 2002, Sandra left her parents' home and, rather than leave her children with her parents, left them in the care of the Scotts, the paternal grandparents. When questioned by the Joneses, Sandra denied that she had left her children with the Scotts. In late December 2002, however, the Joneses discovered that Sandra had left her children with the Scotts, and they contacted Barbara Scott regarding visitation with Austin and Leanne. Initially, they were permitted to visit Leanne and Austin; however, Barbara Scott discontinued the visits in April 2003. Concerned that the Scotts had been interfering with Sandra's parental rights, the Joneses suggested that Sandra try visiting with her children. In May 2003, Sandra attempted to visit her children at the Scotts' home but was refused visitation. Sandra stated that the last time she visited the Scotts' home, her ex-husband, Damon Scott, attacked her in Barbara Scott's presence. Barbara Scott denied this allegation. The Joneses then filed a petition for guardianship.

The following was established at the hearing on the guardianship petition. Barbara Scott is age forty-seven and Chester Scott is sixty-nine. Although Chester and Barbara were divorced in 1996, they continue to reside together. They reside in Scott County in a two-bedroom home, where Austin and Leanne share a bedroom. Barbara Scott has three children, none of whom obtained a high school diploma, and Barbara Scott has only a seventh-grade education. Chester Scott completed the eighth

grade. Barbara Scott does not have a driver's license due to her limited reading ability. She is a homemaker, but Chester Scott is employed outside of the home as a long-haul truck driver. He spends Monday through Friday on the road and returns home on the weekends. Chester Scott has health insurance coverage for himself through his employer but does not have health insurance for Barbara Scott. The insurance provided through Chester Scott's employer would not cover the children; however, he testified that he could provide health insurance for Leanne and Austin. The Scotts admitted that Chester Scott drinks beer and whisky with his son in the presence of the children, and Barbara Scott admitted that she pled guilty to a charge of third-degree battery against her oldest son.

Frances and Emmett Jones also reside in Scott County. Frances Jones is forty-two years old, and Emmett Jones is forty-four years old. They have been married for twenty-six years and have three children. Their two oldest children have obtained high school diplomas, and their youngest daughter is currently a junior in high school, where she participates in cheerleading and softball. Frances Jones is a special education instructor and is certified to teach mildly handicapped children in grades kindergarten through twelfth. She has a bachelor's degree in Education and is certified in Early Childhood Development, which qualifies her to teach kindergarten through sixth grade. In her testimony, Frances Jones stressed the importance of education and proper discipline. The Joneses do not consume alcohol, except for the occasional drink on special occasions, and do not keep alcoholic beverages in their home. They reside in a two-story, four-bedroom home and testified that they are physically and financially able to take on the responsibility of having Leanne and Austin reside in their home. Frances Jones stated that, if placed in her home, the children would sleep in their own separate bedrooms.

While in Chester and Barbara Scott's care, Leanne and Austin attended Waldron Elementary School. Both children had been assigned to Charlene Moudy's kindergarten class, Leanne one year and Austin the following year. While in Ms. Moudy's class, Leanne demonstrated low performance but progressed as the year went on. Ms. Moudy recommended tutoring but was not contacted by the Scotts regarding her suggestion. Ms. Moudy did recall, however, that both Frances Jones and Barbara Scott at-

tended parent–teacher conference day. The Joneses testified that, while in the Scotts' care, Austin began throwing temper tantrums and using profanity.

At the hearing, Sandra admitted that she had abused drugs and alcohol; that she moved from her parent's home in October 2002 because she was on drugs; that her parents offered to get her help, but that she refused it; that after she moved she was not able to care for her children; that she feared that if she took her children to her parents' home, they would have placed her in a rehabilitation facility; and that instead she took them to Barbara and Chester Scott's home. While the children were at the Scotts' home, Sandra was only permitted to visit them on three occasions. She testified that she thought she had given up custody of her children because she had signed a form authorizing Barbara Scott to seek medical treatment for the children. Sandra testified that, although she is no longer abusing drugs, she is not able to properly care for her children. She stated that she wanted her parents to have custody of the children because she was concerned with the drinking and "partying" that occurred at the Scotts' home. During her testimony, the following colloquy occurred between Sandra and the trial court:

> COURT: Now the Scotts apparently were appropriate people to have — to raise your children back in October of last year. What has changed since October of last year, so that they're not the appropriate people to raise your children?

> SANDRA: I want my children in my life, sir.

> COURT: You can't raise your children. You don't even have a home. What has change about the Scotts between October of 2002, and September 2003, where they were appropriate then, and they are not now?

> SANDRA: Nothing, nothing has changed.

> COURT: All right. You may stand down.

The trial court entered its order appointing the Scotts co-guardians of the children on September 30, 2003. In the order, the trial court set aside the grant of custody in favor of Sandra Scott as provided in the divorce decree. The trial court also found that

the two children were incapacitated due to their minority; that Sandra Scott testified that there has been no change in circumstances since she left them in the care of the Scotts; that Sandra Scott voluntarily left the children in the Scotts' care; that the children need stability in their lives; and that it is in their best interest to continue in the care of the Scotts. It is from this order that the Joneses appeal.[1]

■ We review probate proceedings *de novo*, but we will not reverse the trial court's decision unless it is clearly erroneous. *Moore v. Sipes*, 85 Ark. App. 15, 146 S.W.3d 903 (2004). A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Walker v. Torres*, 83 Ark. App. 135, 118 S.W.3d 148 (2003). When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Moore, supra*.

■■ When appointing a guardian, the trial court must be satisfied that (1) the person for whom the guardianship is sought is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interest of that person; and (3) the person to be appointed guardian is qualified and suitable. *Id*. When the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *Id.*; *see also Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000) (stating that the paramount concern in guardianship cases is the best interest of the child). In a guardianship proceeding, there is a preference for the natural parent, unless it is established that the natural parent is unfit. *Id*.

In the instant guardianship proceeding, there was a preference for Sandra Scott as the natural parent. She, however, does not appeal from the trial court's order, which set aside the grant of custody in her favor and effectively determined that she was an unfit parent. We, therefore, need not determine whether the trial

---

[1] This is the second appeal in this case. In the first appeal, appellants requested four extensions to file their brief, and when the brief was finally tendered, it was rejected due to insufficiencies in the addendum. The brief was submitted on June 15, 2004, and this court ordered rebriefing due to deficiencies in the appellants' addendum in an unpublished opinion delivered January 19, 2005. Thereafter, appellants attempted to tender a brief, which was rejected. Appellants' corrected brief was finally tendered on February 17, 2005.

court's decision granting custody of her minor children to a third party was clearly erroneous with respect to Sandra Scott. The trial court also found that Leanne and Austin were incapacitated due to their minority, and that a guardianship was needed to ensure stability in their lives. The Joneses do not challenge these findings. Therefore, we only consider whether the Joneses are suitable guardians, and whether the trial court's decision was in the best interest of the two minor children.

■ The Joneses first argue that the trial court applied the incorrect standard by requiring a material change in circumstance before finding that there existed a basis for granting their guardianship petition and awarding them guardianship of the minor children. It is true that, when a trial court modifies an existing custody order, the test is whether there has been a material change in circumstances and whether the modification is in the best interest of the children. *Walker, supra.* In this case, the trial court was considering a petition for guardianship, and the standard is whether the grant of the petition is in the best interest of the children. *Moore, supra.* To the extent that the trial court required a showing of a material change in circumstances, that ruling was clearly erroneous. *See id.* (stating that the standard of review for guardianship cases is the best interest of the child).

The Scotts contend that the trial court did not require a finding of material change in circumstances, but that it merely made a finding of fact that there had been no material change in circumstances in order to stress the fact that Sandra Scott had left the children with them voluntarily, and that the children had continued to live with them at the time of the hearing. We disagree.

■■ During Sandra Scott's testimony, she expressed a desire to have her children placed in the custody of her parents, the Joneses. The trial court then asked Sandra to explain what circumstances had changed since she left her children with the Scotts that would now make them inappropriate people to raise her two children. Sandra responded that no circumstances had changed. It is clear from the colloquy between Sandra and the trial court that the trial court was requiring Frances and Emmett (and Sandra to an extent) to demonstrate a change in circumstances regarding the Scotts that would make them inappropriate guardians for the two minor children—an incorrect standard in guardianship proceedings. *Moore, supra.* The trial court's use of this standard was clearly

erroneous. Moreover, the trial court apparently concluded that, because Sandra Scott voluntarily left her children with the Scotts in the first instance, were appropriate guardians to care for her children. Sandra left her children with the Scotts because she feared facing her parents and her drug addiction. That decision hardly supports a finding that the Scotts were fit and proper guardians for two minor children at the time Sandra left them in their custody. She admitted that, at the time she left her children with the Scotts, she had a drug problem; and that, if she had told her parents, they would have placed her in a drug-rehabilitation facility. Thus, it is clear that, at the time Sandra voluntarily left her children with the Scotts, she was not motivated by the fact that she believed them to be the most fit guardians, but rather by the fact that she could continue her drug use without being held account-able for her actions — conduct that her parents would not allow.

In addition to the colloquy during the guardianship hearing, the trial court reiterated in its written order that there had been no material change in circumstances since the children were placed in the Scotts' care, and the order also makes reference to the children needing stability in their lives. In custody cases, our courts are often concerned with issues related to stability, and this court has stated that, while custody is always modifiable, our court requires a more rigid standard for custody modification than for initial custody determinations in order to promote *stability* and continuity for the children and the discourage repeat litigation of the same issues. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). This case, however, is not a custody case. The fact that the trial court repeatedly discussed material change in circumstances and the need for stability suggests that it was relying on the standard applicable to custody cases and not the standard used in guardian-ship cases. The trial court's reliance on the incorrect standard was clearly erroneous.

We now turn to the Joneses' second point on appeal: whether the trial court's grant of guardianship in the Scotts' favor was in the children's best interest. We find that the trial court's decision is clearly erroneous, and that a definite mistake has been committed. Further, it is clearly in the minor children's best interest to be placed in Joneses's care. The Joneses have more living space, and the children would have their own bedrooms if placed with the Joneses. In their current situation, they share a bedroom, which may be appropriate during their youth, but may

not be so as the children become older. The Joneses have a demonstrated interest in the promotion of educational goals and discipline. Frances Jones is a certified special-education instructor and certified to teach grades kindergarten through twelfth grade. She would be instrumental in assisting the children with their educational goals, especially in Leanne's case where she had demonstrated low performance skills in Ms. Moudy's kindergarten class and where Ms. Moudy recommended that she participate in some tutorial program. On the other hand, Barbara Scott has a seventh grade education, and Chester Scott has an eighth grade education; none of her three children have obtained a high school diploma. Barbara Scott is also dependent on another family member, Bonnie Winemiler, to provide tutoring to the children. Barbara Scott stated that Bonnie would "come by from time to time to help Leanne." The Joneses have been married for twenty-six years, while the Scotts are divorced but living together.

■   Regarding the children's day-to-day activities, because Chester is a long-haul truck driver and works Monday through Friday, Barbara Scott would be the children's primary caregiver. However, Barbara Scott admitted that she has limited reading ability; and that, because of her limited reading ability, she has been unable to obtain a valid driver's license. Without a valid driver's license, Barbara Scott is unable to transport the children, legally, even in the case of an emergency. She also pled guilty to a violent crime, which she committed against one of her own children. The record shows that Barbara Scott struck one of her children with a whiskey bottle. Unlike the Joneses, who very rarely consume alcohol, Chester Scott admitted to drinking whisky and beer with Damon in the children's presence, and Austin has displayed unruly conduct and begun using profanity since being in the Scotts' care. Based on the foregoing facts and all of the testimony presented in this case, we conclude that the trial court's decision is not in the children's best interest and remand. However, we are mindful that two full school years have elapsed since entry of the order that is the subject of this appeal. We reverse and remand to allow the trial court to conduct such further proceedings as may be necessary, *see Walker, supra,* and for entry of an order that is not inconsistent with this opinion.

Reversed and Remanded.

GRIFFEN and GLOVER, JJ., agree.