Cite as 2019 Ark. 371

# SUPREME COURT OF ARKANSAS

No. CV–18–566

| | |
|---|---|
| | **Opinion Delivered** December 12, 2019 |
| HERITAGE PROPERTIES LIMITED PARTNERSHIP | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-16-6419] |
| V. | |
| WALT & LEE KEENIHAN FOUNDATION, INC. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| APPELLEE | |
| | REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

Appellant Heritage Properties Limited Partnership ("Heritage") appeals the Pulaski County Circuit Court's order granting appellee Walt & Lee Keenihan Foundation, Inc.'s (the "Foundation") motion for summary judgment and dismissing Heritage's complaint with prejudice. Heritage's complaint sought to set aside an alleged fraudulent conveyance to the Foundation pursuant to a Transfer on Death ("TOD") beneficiary designation on an account owned by Leta Keenihan.[1] Heritage presents two arguments on appeal: (1) the circuit court has jurisdiction under the Fraudulent Transfers Act (the "Act")[2] to hear claims

---

[1]Throughout the record, Ms. Keenihan is referred to as both Lee Keenihan and Leta Keenihan.

[2]Although Heritage refers to this Act as the "Uniform Voidable Transactions Act," we note that the amendment which substituted the "Uniform Voidable Transactions Act" subchapter heading for "Fraudulent Transfers" did not occur until 2017. Several other amendments to the Act were also made in 2017. However, the alleged fraudulent

to pursue assets from a transferee that received assets pursuant to a payable-on-death clause; and (2) the circuit court erred in granting the Foundation's motion for summary judgment. We hold that the circuit court erred in deciding this case by summary judgment and reverse and remand for trial.

## I. *Facts and Procedural History*

On May 13, 2014, Leta Keenihan created an Ameriprise SPS Advantage Account in the amount of $500,000 at Ameriprise Financial and designated the Foundation as the beneficiary of the account on her death. On June 9, 2014, Leta executed a TOD beneficiary form naming the Foundation as beneficiary of the account. Leta died on December 8, 2015, and the balance of the Ameriprise account, $1,114,000, was transferred to the Foundation pursuant to the TOD beneficiary designation.

On February 22, 2016, the Pulaski County Circuit Court, Fifteenth Division, entered an order probating Leta's will and appointing John B. Peace as personal representative of the Leta Keenihan Estate (the "Estate").[3] Peace accepted appointment, and he was issued letters testamentary authorizing him to act as executor for and on behalf of

---

conveyance was triggered by Leta's death on December 8, 2015. Additionally, the complaint was filed on November 22, 2016. Thus, we will rely on the statutes in effect at the time of the alleged fraudulent conveyance. *See Clark v. Bank of Bentonville*, 308 Ark. 241, 246, 824 S.W.2d 358, 361 (1992) (although citing Ark. Stat. Ann. §§ 68-1301 and 68-1302 (Repl. 1979), we applied the statutes applicable at the time of the alleged fraudulent conveyance).

[3]We recognize that pursuant to Amendment 80 to the Arkansas Constitution, which became effective on July 1, 2001, our state courts are no longer "probate courts" and "circuit courts." These courts have merged and now carry the designation of "circuit court." *Alexander v. Alexander*, 351 Ark. 359, 93 S.W.3d 688 (2002). However, for ease of discussion, *The Estate of Leta Mae Keenihan, Deceased*, No. 60PR-16-197 (Pulaski Cty. Cir. Ct. Feb. 22, 2016), which was filed in the probate division of the circuit court, will be referred to as the probate case.

2

the Estate. On August 22, 2016, Heritage filed three claims against the Estate based on various contracts with Leta. Heritage's claims totaled approximately $851,000.

On November 22, 2016, after learning that the Estate was insolvent—tax claims and claims of other creditors will exceed the reasonable value of the estate—Heritage filed its complaint in the Pulaski County Circuit Court, Sixth Division, against the Foundation. Heritage alleged that it is a creditor of the Estate; the Foundation was a nonprofit corporation Leta established prior to her death; and the transfer in excess of $1,000,000 from Leta to the Foundation was a fraudulent conveyance and should be set aside. Heritage alleged that its claim is for approximately $851,000, the Foundation should be ordered to pay the $851,000 claim to Heritage, and the Estate is entitled to the remaining funds to pay off creditors. Heritage also sought a lien on the recovery to the extent of its claim and asserted that the balance should be paid to the Estate. Finally, Heritage asserted that it is entitled to a restraining order against the Foundation to prevent the Foundation from spending the transferred funds.

On December 19, 2016, the Foundation filed its answer. The Foundation acknowledged that Heritage has filed a claim against the probate estate but noted that the claim has not been allowed. The Foundation denied that Heritage is a creditor of the Foundation within the meaning of the Act. For its four affirmative defenses, the Foundation asserted that (1) Heritage does not have standing to bring its claim against the Foundation; (2) Heritage's complaint should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to state facts upon which relief can be granted; (3) Heritage's complaint should be dismissed pursuant to Rule 9(b) and 10(d) of the Arkansas

3

Rules of Civil Procedure for failure to plead the alleged fraudulent conveyance with particularity; and (4) Heritage's complaint should be dismissed pursuant to Arkansas Code Annotated section 4-59-210 based on estoppel and the terms of the beneficiary designation of the Ameriprise Financial account. The Foundation requested that the circuit court dismiss Heritage's complaint with prejudice. Attached as exhibit A to its answer were letters from Ameriprise Financial to Leta that listed her primary beneficiary designation for her Ameriprise Brokerage account and SPS Advantage accounts as follows: WALT & LEE KEENIHAN FOUNDATION, INC., FOUNDATION 100%.

On December 26, 2017, the Foundation filed its motion for summary judgment on Heritage's complaint. The Foundation argued that Heritage did not have standing to bring the present action. The Foundation asserted that Heritage was required to bring its claim pursuant to Arkansas Code Annotated section 28-49-109 (Repl. 2012), which authorizes the personal representative of a grantor who has fraudulently transferred any interest in real or personal property to apply to a court of competent jurisdiction to have the conveyance or transfer set aside and to recover the property, or the value thereof, for the use and benefit of all persons having an interest in the estate of the alleged fraudulent grantor. The Foundation argued that Heritage has not presented proof that either Peace or the probate court had authorized it to bring the current action. Further, the Foundation argued that Heritage's complaint, which seeks preference for Heritage to the alleged transfer to the exclusion of other estate creditors, is not for the use and benefit of all persons having an interest in the Estate. Finally, the Foundation argued that the transfer pursuant to a TOD beneficiary designation was not a fraudulent transfer as a matter of law and undisputed fact.

4

On January 15, 2018, Heritage filed its response to the Foundation's motion for summary judgment. Heritage argued that it has standing under the Act for it to pursue its claims against the Foundation, despite the personal representative's option to pursue fraudulent conveyances by the decedent pursuant to Arkansas Code Annotated section 28-49-109. On February 13, 2018, Heritage filed a cross-motion for summary judgment. In support of its motion, Heritage contended that there is no genuine issue of material fact that the transfer of the account funds constitutes a fraudulent transaction under Arkansas law and Heritage is entitled to a voidance of the transfer to the extent necessary to satisfy its claims against the Estate. In its brief in support of its motion for summary judgment, Heritage asserted that several claims have been filed in the probate case, including three claims by Heritage. Heritage attached the July 10, 2017 joint amended petition for approval and classification of claims and petition for instructions by trustee filed in the probate case. The petition was filed by Peace in his capacity as the executor of the Estate, and it acknowledged that Heritage had filed affidavits of secured claims against the Estate in the following amounts: $170,000, $181,376, and $500,170. Heritage also attached its three affidavits of secured claims against the Estate and supporting documents that were filed in the probate case. These documents also demonstrated that the Estate was subject to other claims, specifically, a 2005 claim by the IRS for tax deficiencies in excess of $350,000. Heritage argued that because the federal government was entitled to be paid first, the remaining claims would not be satisfied due to insolvency of the Estate. Heritage contended that Leta "knew or should have known that she had debts beyond her ability to pay as they came due." Further, neither Leta nor her Estate received anything in exchange for the transfer to the

5

Foundation, and her Estate was rendered insolvent based on the transfer. Accordingly, Heritage asserted that once the transfer occurred, its only remedy was to seek a voidance of the transfer under the Act.

On March 2, 2018, the Foundation filed its response to Heritage's motion for summary judgment. The Foundation asserted that as demonstrated by the July 10, 2017 joint petition filed by Peace, the issue of whether Heritage has standing to assert a valid claim against the Estate is disputed by the executor. The Foundation stated that, at most, Heritage has a disputed unsecured, nonpriority claim against the Estate. Based on this position, the Foundation contended that Heritage cannot establish that it is a creditor with a claim within the meaning of Arkansas Code Annotated section 4-59-201(4). Further, the Foundation asserted that the transfer pursuant to a TOD beneficiary designation was not a fraudulent transfer as a matter of law and undisputed fact.

On March 14, 2018, after a hearing on the motions, the circuit court entered its order denying Heritage's motion for summary judgment and granting the Foundation's motion for summary judgment. The order stated in pertinent part:

> 1. With regard to [Heritage's] standing, the court finds that the probate court has exclusive jurisdiction over claims against a decedent, and that this Court lacks jurisdiction to make a determination of the merits of this lawsuit.
>
> 2. With regard to [Heritage's] claim against [the Foundation] under the Uniform Voidable Transaction Act, the court finds that [Heritage] has failed to provide proof of the decedent's intent at the time of her execution of the transfer on death beneficiary form in May 2014.

The circuit court dismissed Heritage's complaint with prejudice. Heritage appealed to the Arkansas Court of Appeals. Our court of appeals certified the present case to this court

6

pursuant to Arkansas Supreme Court Rules 1–2(b)(1), (4), (5), and (6) as an issue of first impression; an issue of substantial public interest; a significant issue needing clarification or development of the law; and an appeal involving the interpretation of an act of the General Assembly. On February 14, 2019, we granted certification of the appeal.

## II. *Law and Analysis*

The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Ark. Soil & Water Conservation Comm'n v. City of Bentonville*, 351 Ark. 289, 92 S.W.3d 47 (2002). "When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further." *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001). This court is very reluctant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*, 38 S.W.3d at 360. Further, we must give effect to the specific statute over the general. *Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 369 Ark. 487, 256 S.W.3d 496 (2007). "This court has long held that a general statute must yield to a specific statute involving a particular subject matter." *Comcast of Little Rock, Inc. v. Bradshaw*, 2011 Ark. 431, at 9, 385 S.W.3d 137, 142–43.

We now turn to the circuit court's finding as set forth above:

> 1. With regard to [Heritage's] standing, the court finds that the probate court has exclusive jurisdiction over claims against a decedent, and that this Court lacks jurisdiction to make a determination of the merits of this lawsuit.

7

On appeal, Heritage argues that the circuit court erroneously ruled that the probate court has exclusive jurisdiction over the claims against a decedent because the Act expressly allows a creditor to pursue a claim against a transferee as a result of a voidable transfer. Ark. Code Ann. § 4-59-207. Heritage argues that the debtor, whether alive or deceased, is not required to be a part of an action by a creditor to recover under the Act. Additionally, there is no requirement that an action under the Act be brought within the probate court.

A. Jurisdiction

As set forth above, the circuit court ruled that the probate court has exclusive jurisdiction over the claims against a decedent and that it lacks jurisdiction to make a determination of the merits of this lawsuit. We disagree. First, pursuant to Amendment 80, section 6(A) of the Arkansas Constitution, "Circuit Courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." In *First National Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005), we explained:

> As a consequence of Amendment 80, courts that were formerly chancery and circuit courts are now referred to as circuit courts. Because Amendment 80 states that circuit courts assume the jurisdiction of chancery courts, circuit courts simply have added to their already existing jurisdiction as a court of law the equitable jurisdiction which chancery courts held prior to adoption of the Amendment. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Frawley*, 350 Ark. 444, 453, 88 S.W.3d 418 (2002). In other words, no new or expanded jurisdiction beyond that formerly existing in the chancery and circuit courts was created through Amendment 80. Rather, circuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. See Amendment 80, § 19(B)(1); Administrative Order No. 14, §§ 1(a) and (b), 344 Ark. Appx. 747–48 (2001). *See also Moore v. Sipes*, 85 Ark. App. 15, 146 S.W.3d 903 (2004).

360 Ark. at 533, 203 S.W.3d at 91–92.

Second, TOD accounts are governed by the Uniform TOD Security Registration Act, Arkansas Code Annotated sections 28-14-101 et seq. (Repl. 2012). Pursuant to section 28-14-106, the designation of a TOD beneficiary on a registration in beneficiary form has no effect on ownership until the owner's death; therefore, a registration of a security in beneficiary form may be canceled or changed at any time by the owner without the consent of the beneficiary. A TOD resulting from a registration in beneficiary form "is effective by reason of the contract regarding the registration between the owner and the registering entity and this chapter and is not testamentary." Ark. Code Ann. § 28-14-109(a). Pursuant to section 28–14–107, TOD accounts are payable to the beneficiary or beneficiaries upon the death of the owner; they do not become assets of the owner's estate unless no designated beneficiary survives the death of the owner. *See also Ginsburg v. Ginsburg*, 359 Ark. 226, 230, 195 S.W.3d 898, 901 (2004).

In the present case, the Foundation, as the beneficiary of the TOD account, received the money on transfer. Stated differently, the transfer did not become an asset of the Estate and passed directly from the TOD account to the Foundation. Accordingly, we disagree with the circuit court's finding regarding the exclusivity of the probate court's jurisdiction. Pursuant to Amendment 80 and the fact that the money transferred from the TOD account did not become part of the Estate, the circuit court clearly had jurisdiction in the present case.

B. Standing

Next, Heritage contends that it has standing because the Act expressly provides that certain transfers are voidable as to creditors of the transferor and grants remedies to the

9

creditors, including voiding the transactions to the extent necessary to satisfy its claim against the debtor. Therefore, Heritage has standing to bring the claim.

In response, the Foundation argues that Heritage should not be allowed to bypass the provisions set forth in the probate code that allow for the pursuit of an alleged fraudulent transfer. Specifically, the Foundation argues that Heritage is improperly attempting to obtain preference for itself, which is contrary to the probate code. In sum, the Foundation contends that Heritage lacks standing to assert its fraudulent-conveyance claim. Instead, relying on Arkansas Code Annotated section 28-49-109, the Foundation maintains that John Peace, as the executor of the Estate, has standing to assert the fraudulent–conveyance claim. Further, the Foundation contends that Heritage has failed to allege or present proof that it has received authorization from the Pulaski County Probate Court in the Estate matter to file or prosecute the present action in the place of Mr. Peace as a special administrator pursuant to Arkansas Code Annotated section 28-48-103.

We acknowledge that the procedures set forth in Arkansas Code Annotated sections 28-49-109 and 28-48-103 allow for the personal representative or a special administrator to pursue claims. However, Arkansas Code Annotated section 28-14-109, which is also contained within the probate code, governs nontestamentary transfers on death:

(a) A transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this chapter and is not testamentary.

(b) This chapter *does not limit the rights of creditors of security owners against beneficiaries and other transferees under other laws of this state*.

10

Ark. Code Ann. § 28-14-109 (emphasis added).[4] Thus, with regard to a TOD, our probate code makes clear that it does not limit the right of creditors against beneficiaries and other transferees. In fact, the statute plainly allows creditors to pursue their claims against transferees under other laws of this state. Clearly, the Act is encompassed within the meaning of "other laws of this state." In sum, while there are procedures within the probate code that would allow for the challenge of an alleged fraudulent conveyance, Arkansas law provides that a creditor may also pursue its claim under the Act.

We now turn to whether Heritage has standing to pursue its claim under the Act. The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006). Heritage argues that as Leta's creditor, it has standing pursuant to the Act. As defined in the Act, a "creditor" is a person who has a claim. Ark. Code Ann. § 4-59-201(4) (Repl. 2011). A claim means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *Id*. § 4-59-201(3). The Foundation agrees that Heritage "would technically meet the definition of a creditor with a claim in the context of Ark. Code Ann. §§ 4-59-204 and 205." Arkansas Code

---

[4]The Foundation devotes a large portion of its argument to the Uniform Transfer on Death Security Registration Act. Subsection (a) of Arkansas Code Annotated section 28-14-109 is contained in section 6-309 of the uniform act, however, subsection (b) is not. The Foundation goes on to explain that section 6-102 of the Uniform Probate Code provides for liability of nonprobate transferees for creditor claims and statutory allowances. A review of this Uniform Probate Code provision demonstrates that it would be helpful and would provide a roadmap for creditors to pursue claims. However, our legislature has not adopted this provision.

11

Annotated section 4-59-204, which governs fraudulent transfers as to present and future creditors, provides in pertinent part:

>    (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

>    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

>    (2) *without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor*:

>    (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

>    (ii) *intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.*

Ark. Code Ann. § 4-59-204 (emphasis added). Arkansas Code Annotated section 4-59-205, which governs transfers fraudulent as to present creditors, provides in pertinent part:

>    (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Ark. Code Ann. § 4-59-205. Further, a transfer takes place "when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this subchapter that is superior to the interest of the transferee." Ark. Code Ann. § 4-59-206(1)(ii). Once the transfer has occurred, pursuant to Arkansas Code Annotated section 4-59-208(b)(1), the creditor may recover judgment . . . for the amount necessary to satisfy the creditor's claim. The judgment may be entered against the first transferee of the

12

asset or the person for whose benefit the transfer was made. Ark. Code Ann. § 4-59-208(b)(1). Finally, section 4-59-207 governs the remedies of the creditors as follows:

(a) In an action for relief against a transfer or obligation under this subchapter, a creditor, subject to the limitations in § 4-59-208, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by §§ 16-110-201 − 16-110-211;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii) any other relief the circumstances may require; and

. . .

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Ark. Code Ann. § 4-59-207. The preceding provisions clearly allow for a creditor to seek avoidance of a fraudulent transfer against the transferee to the extent necessary to satisfy the creditor's claim. Thus, we hold that Heritage, as a creditor, has standing to pursue its claim under the Act against the Foundation as the transferee.

## C. Summary Judgment

Having found that Heritage is a creditor as defined in the Fraudulent Transfer Act and that it has standing to bring a claim against the Foundation, we now turn to whether

13

the circuit court erred in granting the Foundation's motion for summary judgment on the basis that Heritage failed to present evidence of Leta's intent at the time of the TOD designation.

Despite the circuit court's finding that it lacked jurisdiction to "make a determination of the merits of this lawsuit" the circuit court went on to find that

> 2. With regard to [Heritage's] claim against [the Foundation] under the Uniform Voidable Transaction Act, the court finds that [Heritage] has failed to provide proof of the decedent's intent at the time of her execution of the transfer on death beneficiary form in May 2014.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* As to issues of law presented, our review is de novo. *Id.* The filing of cross-motions for summary judgment, however, does not necessarily mean that there are no material issues of fact in dispute. In some cases, a party may concede that there is no issue if the party's legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if the opponent's theory is adopted. *Wood v. Lathrop*, 249 Ark. 376, 459 S.W.2d 808 (1970).

On appeal, Heritage argues that the circuit court erroneously found that Heritage did not provide proof of Leta's intent when she executed the TOD designation in May

2014. Specifically, Heritage asserts that the circuit court applied the incorrect standard for fraudulent transfers under the Act by ruling that Heritage must demonstrate Leta's intent. As Heritage correctly points out, it is not necessary to prove actual intent under either section 4-59-204 or section 4-59-205. While section 4-59-204(a)(1) does require that the debtor intend to defraud his or her creditors, section 4-59-204(a)(2)(ii) does not require actual intent. Instead, the standard under that provision is whether the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or "believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due." Ark. Code Ann. § 4-59-204(a)(2)(ii). In other words, here, there are two ways to set aside the transfer: (1) demonstrate Leta's intent; or (2) demonstrate that Leta made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and Leta intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due. Pursuant to section 4-59-205(a), the creditor may prove that the "debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Here, based on the record, the circuit court failed to consider Heritage's argument pursuant to either section 4-59-204(a)(2)(ii) or section 4-59-205(a). As stated above, these provisions do not require Heritage to demonstrate Leta's actual intent. Heritage presented proof that the IRS had a claim for tax deficiencies dating back to 2005, that Leta had multiple creditors, and that her Estate was likely insolvent. The evidence, considered in the

15

light most favorable to Heritage, raises a factual issue precluding summary judgment as to whether Leta reasonably should have believed that she would incur debts beyond her ability to pay. Given our discussion above and our standard of review, we hold that the circuit court erred in granting the Foundation's motion for summary judgment. Therefore, we reverse the order of summary judgment for the Foundation and remand the case for trial.

Reversed and remanded.

WOOD and WOMACK, JJ., concur in part and dissent in part.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part**. I agree with the majority that the circuit court had jurisdiction over Heritage's underlying fraudulent-conveyance claim and that Heritage had standing to bring suit. But I dissent because the circuit court's ultimate disposition remained correct. I have serious concerns about this court's failure to enforce Rule 56 and the effects its liberal application in this case will have on estate planning in Arkansas. I would therefore affirm the circuit court's order granting the Foundation's motion for summary judgment and dismissing Heritage's complaint.

The Foundation filed a motion for summary judgment. It specifically argued two grounds for summary judgment. First, it asserted that Heritage lacked standing. Second, it argued that "the alleged transfer by virtue of a transfer on death ("TOD") beneficiary designation was not a fraudulent transfer." As the majority details in its "Facts and Procedural History" section, Heritage's response to the summary-judgment motion addressed only the Foundation's standing argument. Heritage did not attach supporting affidavits or exhibits.

16

Subsequently, the Foundation filed a reply that noted Heritage failed to "address this separate ground for summary judgment or the summary judgment proof that the Foundation submitted." Heritage, apparently recognizing the procedural error, filed a motion to supplement its deficient response. This motion was not ruled on. Almost two months later, Heritage filed a separate motion for summary judgment arguing that the transfer was voidable under either Arkansas Code Annotated section 4-59-204 or section 4-59-205. The majority maintains that the statements and exhibits attached to Heritage's separate motion filed almost sixty days later are sufficient "proof" to create a material fact worthy of a full trial.

Once a moving party establishes a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Stokes v. Stokes*, 2016 Ark. 182, at 8, 491 S.W.3d 113, 120. This is done in a responsive motion. *See Evans v. Hamby*, 2011 Ark. 69, at 9, 378 S.W.3d 723, 729. Our procedural rules provide that any response and supporting materials must be filed within twenty-one days after the initial motion is served. Ark. R. Civ. P. 56(c). "The nonmoving party must then move beyond formal allegations of pleadings and meet proof with proof by showing that a genuine issue of material fact remains to be litigated." *Mack v. Sutter*, 366 Ark. 1, 5, 233 S.W.3d 140, 144 (2006). Heritage failed to respond, at all, to a dispositive point in the Foundation's motion for summary judgment. Heritage cannot rectify this failure to meet proof with proof by filing a new, separate motion for summary judgment. The majority's decision improperly permits Heritage's later filings to bolster Heritage's failure to meet proof with proof in response to the Foundation's motion.

Even if Heritage had adequately responded to the Foundation's motion, summary judgment would still have been proper. It is unclear what material facts remain to be adjudicated under the majority's analysis. Heritage failed to present any proof that Leta's TOD designation was anything more than standard estate planning. Heritage did not submit any proof or even allege that Leta anticipated her death, that her death was imminent, that she was suffering an acute illness, or any other fact that could have reasonably established that the transfer on death would occur prior to her debts to Heritage becoming due. Absent Heritage factually pleading and submitting proof of this sort, the Foundation was entitled to summary judgment.

My gravest concern with the majority's decision to remand for trial is the door it has opened for creditors to threaten TOD beneficiaries with litigation without having to plead any facts beyond the estate's insolvency. Such a regime would upend much of the estate planning in this state and could lead to unwarranted litigation. I would affirm the circuit court's order.

WOMACK, J., joins.

*Davidson Law Firm*, by: *Charles D. "Skip" Davidson* and *Drew C. Benham*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, for appellee.

18